NCNB FINANCIAL SERVICES, INC., Plaintiff,

v.

Joseph B. SHUMATE, Jr., Defendant.

NCNB FINANCIAL SERVICES, INC., Plaintiff,

v.

COLEMAN FURNITURE CORPORATION, Defendant.

Roy V. CREASY, Trustee, Plaintiff,

v.

COLEMAN FURNITURE CORPORATION PENSION PLAN, Defendant.

Civ. A. Nos. 86–0433–R, 83–0279– R, 86–0432–R and 86–0272–R.

United States District Court, W.D. Virginia, Roanoke Division.

June 30, 1993.

---

George V. Hanna, III, Moore & Van Allen, Charlotte, NC, James F. Douthat, Woods, Rogers & Hazlegrove, Roanoke, VA, for NCNB Financial Services, Inc.

Stephen M. Hodges, Penn, Stuart, Eskridge & Jones, Abingdon, VA, for NCNB Corp. and NCNB Nat. Bank of N. Carolina.

Joseph B. Shumate, Jr., pro se.

John R. Patterson, Roanoke, VA, trustee for Shumate.

G. Steven Agee, Osterhoudt Ferguson Natt Aheron & Agee, P.C., Roanoke, VA, for Patterson.

Roy V. Creasy, Wilson, Vogel & Creasy, Roanoke, VA, trustee.

John S. Edwards, Martin, Hopkins, Lemon & Carter, P.C., Roanoke, VA, for Creasey in Civ.A. No. 86–0432–R.

Harry S. Rhodes, Roanoke, VA, for Creasey in Civ.A. No. 86–0272–R.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

Joseph B. Shumate, Jr. (Shumate), brings a Motion to Quash a notice of lien on his bank account filed by NationsBank of North Carolina, N.A. (the Bank).[1] Shumate contends that some of his funds are protected from attachment, garnishment, or levy under the Employment Retirement Income Security Act's (ERISA's) anti-alienation provision, codified at 29 U.S.C.A. § 1056(d). Shumate claims that other monies constitute social security benefits, protected from legal process by 42 U.S.C.A. § 407(a).

### Funds Traceable to Pension Plan

■ Shumate first seeks to quash the Bank's levy on certain funds traceable to the Coleman Furniture Corporation Pension Plan. By two Memorandum Opinions, issued in October and November, 1992, this Court held that $250,000 plus interest paid into the court registry as part of a dispute between the Pension Plan Trustee Roy V. Creasy and Shumate was still protected by ERISA. Both opinions were affirmed by the Fourth Circuit in an unpublished opinion. *See NCNB Financial Services, Inc. v. Shumate, et al,* Slip Op. No. 92–2474 [993 F.2d 1538 (Table)] (4th Cir. May 18, 1993).

At the time of those decisions, in the Fall of 1992, this Court refused to determine whether ERISA continued to protect funds actually paid out to an employee; the funds still rested in the court registry, and the matter was not ripe for adjudication. However, in June, 1993, the Court Clerk paid out the $250,000 plus interest to Shumate, and Shumate deposited some of this money into a checking account. The Bank immediately

---

1. NationsBank is successor to NCNB National Bank of North Carolina in this action; NCNB National Bank was successor to NCNB Financial Services, Inc.

issued a notice of lien to Shumate's bank, Premier Bank, Inc. of Wytheville, Virginia.

Shumate argues that the Bank may not attach the funds traceable to the Pension Plan by any means for 60 days after his receipt of the funds from the court registry. Shumate bases his argument on ERISA's prohibition against alienation, 29 U.S.C.A. § 1056(d), and on the 60–day rollover period provided by the tax code, 26 U.S.C.A. § 403(a)(4). Shumate points to the Fourth Circuit's decision in *Tenneco, Inc. v. First Virginia Bank*, 698 F.2d 688 (4th Cir.1983), to support his contention that the 60–day rollover period in 26 U.S.C.A. § 403(a)(4) protects employees' funds from legal process while they decide whether or not to place the funds in another ERISA-qualified plan.

The *Tenneco* case did not decide the exact issue in contention today; however, it did state that because the debtor had not rolled over certain funds during the 60–day period provided for that purpose, those funds were subject to garnishment. *Tenneco*, 698 F.2d at 691. Shumate now argues that because the 60–day period has not run out, his funds are still protected by ERISA.

> 26 U.S.C.A. § 403(a)(4)(A) states that:
>
> [i]f ... any portion of ... an employee['s] ... annuity ... is paid to him, ... [and] the employee transfers any portion of the property in such distribution to an eligible retirement plan, ... then such distribution (to the extent so transferred) shall not be includible in gross income for the taxable year in which paid.

According to 26 U.S.C.A. § 403(a)(4)(B) and § 402(5)(C), the employee must transfer the funds to the second ERISA-qualified plan within 60 days of receipt.

ERISA does not explicitly incorporate or cross-reference to 26 U.S.C.A. §§ 402 and 403. There is no reason to believe that ERISA's prohibition against alienation has any relation whatsoever to the 60–day exemption period from federal income taxation. As stated by the bankruptcy court in *In re Toone*, 140 B.R. 605 (Bankr.D.Mass.1992), "[w]hatever the status of the funds may be during the roll-over period for purposes of taxation ... they are no longer within the [anti-alienation] protection afforded by ERISA and the Internal Revenue Code."

This view of ERISA's relation to the 60–day rollover period in 26 U.S.C.A. § 403 is supported by dicta in the Supreme Court's decision in *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), which stated that § 206(d)(1) of ERISA, codified at 29 U.S.C.A. § 1056(d)(1), "bars the assignment or alienation of pension plan *benefits*, and thus prohibits the use of state enforcement mechanisms only insofar as they *prevent those benefits from being paid* to plan participants." 486 U.S. at 836, 108 S.Ct. at 2189 (emphasis added in part). *See Brosamer v. Mark*, 561 N.E.2d 767 (Ind.1990) (holding that once an employee deposits pension plan funds in a bank account, ERISA no longer protects the funds, following the Fourth Circuit in *Tenneco* ).

Furthermore, today's decision on this issue is in harmony with the Fourth Circuit's decision in *Tenneco*. That case deemed that ERISA protects funds even if they were *constructively* received by the employee; that is, if the funds still remained in the pension plan but could be paid out at any time. However, once the line of *actual* receipt is crossed, as it undoubtedly is in this case, ERISA no longer protects funds despite their origination in an ERISA-qualified pension plan. The rollover period provided by the tax code is for income tax purposes only, and has no effect on third party access to funds actually paid out to the employee.

### Social Security Benefits

■ Shumate also claims an exemption for funds in another account that he maintains are social security benefits. 42 U.S.C.A. § 407(a) prohibits attachment, levy, or garnishment on such benefits. Social security benefits are protected even if they are commingled in a savings or checking account with funds from other sources. *See Philpott v. Essex County Welfare Board*, 409 U.S. 413, 416–17, 93 S.Ct. 590, 592–93, 34 L.Ed.2d 608 (1973). If the recipient of social security benefits commingles the benefits with other funds, he is entitled to protection as to those funds that are reasonably traceable to social

security income. *See Philpott,* 409 U.S. at 416–17, 93 S.Ct. at 592–93.

██ Shumate's bank statements for his bank account number 2543192 with Premier Bank demonstrate that for the last six months, Shumate has deposited some money from his $758.00 social security check each month, mixed in with deposits from other sources. After careful examination of these records using the first in, first out, accounting method, this Court concludes that Shumate clearly withdrew amounts exceeding the social security benefits, usually within the same month, exhausting the funds that might be traced to social security.

For example, Shumate deposited $100 from social security on May 5, 1993, bringing his total balance up to $186.87. He then deposited $500 from other sources. From May 11 to May 12, Shumate withdrew $627.69; using the first in, first out accounting method, Shumate had exhausted the $100 (as well as the $86.87, which based on this Court's calculations, was not traceable to social security income).

On June 9, 1993, Shumate's balance stood at $63.40, none of which was traceable to social security benefits. On June 10, 1993, Shumate deposited $400 to his account from his social security check, his most recent deposit from such a source. On June 13, 1993, Shumate deposited $461.32 from another source. Currently, his balance stands at $624.47. Although Shumate has not provided this evidence (his latest bank statement is current through June 9, 1993) Shumate obviously withdrew $300.25 over this period. Using the same accounting method as before, the only part of the $624.47 that constitutes social security benefits is $163.15. Therefore, Shumate is entitled to the protection accorded to social security benefits by 42 U.S.C.A. § 407, but only as to $163.15.

Accordingly, Shumate's Motion to Quash is denied as to the funds that originated from the Coleman Pension Plan. As to the notice of lien on Shumate's social security benefits, Shumate is entitled to protection on $163.15 of the funds in his checking account number 2543192 with Premier Bank, Inc. of Wytheville, Virginia.

## ORDER

For the reasons set forth in the Memorandum Opinion entered this day, Defendant Joseph B. Shumate Jr.'s Motion to Quash the Notice of Lien issued by NCNB on Shumate's bank accounts is DENIED as to funds originating from the Coleman Furniture Corporation Pension Plan. As to funds originating from social security income, Shumate's Motion to Quash the Notice of Lien is granted on $163.15 in his checking account number 2543192 with Premier Bank, Inc., of Wytheville, Virginia.