**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4525
_____

ESTATE OF WILLIAM E. KENSINGER, JR.,
Appellant,

v.

URL PHARMA, INC.; ADELE KENSINGER
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 09-cv-06510)
District Judge:  Honorable Robert B. Kugler
_____

Argued:  December 8, 2011
_____

Before: HARDIMAN, BARRY, <u>Circuit Judges</u> and RUFE,[*]
<u>District Judge</u>

(Opinion Filed:  March 20, 2012  )
_____

Lori M. McNeely, Esq. (Argued)
McNeely McGuigan & Biody
Suite 103
505 South Lenola Road
Moorestown, NJ 08057

<u>Counsel for Appellant</u>

_____

[*] Honorable Cynthia M. Rufe, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

Michael S. Rothmel, Esq. (Argued)
33 Grant Street
Mount Holly, NJ 08060
        -and-
Daniel J. Bitonti, Esq.
Cozen O'Connor
457 Haddonfield Road
Liberty View, Suite 300
Cherry Hill, NJ 08002-0000

Counsel for Appellees

———————

OPINION OF THE COURT
———————

BARRY, Circuit Judge

This is a dispute over the disposition of proceeds from a decedent's ERISA-governed 401(k) plan. The decedent, William Kensinger ("William") was married to Adele Kensinger ("Adele") until their divorce in 2008. As part of their divorce decree, Adele waived her right to the proceeds of William's 401(k) plan. William, however, neglected to replace Adele as the designated beneficiary of his 401(k) plan prior to his death a few months after the divorce. His estate ("the Estate") and Adele both claimed a right to the plan proceeds, leading to this litigation. In light of a recent Supreme Court case, there is no dispute that, notwithstanding Adele's waiver, the plan administrator is obligated to pay the 401(k) proceeds to her in accordance with the plan documents. The question before us, which is one of first impression in this circuit, is this: after the plan administrator distributes the funds to Adele, can the Estate attempt to recover the funds by bringing suit directly against Adele to enforce her waiver? For the reasons that follow, we hold that the Estate can sue Adele to enforce her waiver and recover the disputed plan proceeds. The District Court, however, held to the contrary. Accordingly, although we affirm in part, we will

2

also reverse in part.

## I.  Background

### A.  Factual Background

The material facts in this case are straightforward and undisputed.  In 2000, William enrolled in an employee-sponsored deferred savings plan ("401(k) plan") through his employer, URL Pharma, Inc. ("URL").  The 401(k) plan was governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461.  At the time of his enrollment, William was married to Adele, whom he designated as the plan's primary beneficiary.  Their marriage did not last, however, and divorce proceedings commenced in 2008.  On April 20, 2008, William and Adele entered into a Property Settlement Agreement ("PSA"), which, in relevant part, provided:

> [T]he parties mutually agree to waive, release, and relinquish any and all right, title and interest either may have in and to the other's IRA account(s), or any other such retirement benefit and deferred savings plan of like kind and character, and neither shall make any claim to possession of such property as it is presently titled.

The divorce was then finalized in New Jersey state court, with a final divorce decree incorporating the PSA entered on July 10, 2008.

Nine months after the divorce, William died intestate without having changed the designated beneficiary of his 401(k) plan.  Following his death, a dispute arose regarding distribution of the plan proceeds.  Although Adele was still the named beneficiary of the 401(k) plan, the Estate argued that, given her waiver, it was entitled to the proceeds of the plan.  Adele countered that ERISA, which requires that the proceeds be paid to the beneficiary named in the plan documents, trumped her common law waiver.  On November

3

9, 2009, the Estate filed an action against Adele and URL in the Superior Court of New Jersey seeking a declaration that the Estate was entitled to the funds in the 401(k) account.[1] URL removed the matter to the District Court.

## B. The Supreme Court's Decision in *Kennedy*

The leading case in this area is *Kennedy v. Plan Administrator for DuPont Savings & Investment Plan*, 555 U.S. 285 (2009). The facts in *Kennedy* are virtually identical to those in this case. In *Kennedy*, an employee participated in an ERISA employee pension benefit plan and designated his wife as the sole beneficiary. The couple subsequently divorced, and as part of the divorce decree the wife agreed to waive her interest in her husband's pension plan. However, the husband died without amending the pension plan documents to replace his ex-wife as the designated beneficiary. The husband's estate claimed a right to the plan proceeds, citing the ex-wife's waiver. The plan administrator, however, relied on the husband's designation form and paid the funds to the ex-wife. The husband's estate then sued the plan administrator to recover the benefits.

The district court granted summary judgment to the estate and ordered the plan administrator to pay the estate. The Fifth Circuit reversed, holding that the ex-wife's waiver was rendered void by ERISA's anti-alienation provision, which states that "benefits provided under the plan may not be assigned or alienated."[2] 29 U.S.C. § 1056(d)(1). The

---

[1] As of March 31, 2011, the balance of the 401(k) account was $76,242.41. On October 5, 2011, the District Court entered an order memorializing the parties' agreement that URL would deposit the plan proceeds with the Court and would thereafter be dismissed from the action.

[2] By statute, this anti-alienation provision does not apply to a certain class of orders known as "qualified domestic relations orders" ("QDROs"). 29 U.S.C. § 1056(d)(3). To qualify as a QDRO, an order must satisfy certain statutory requirements, such as clearly specifying an alternate payee, the amount of benefits to be paid to the alternate payee, the period to which

Supreme Court affirmed, albeit on different grounds. Contrary to the Fifth Circuit, the Court held that the ex-wife's waiver "did *not* constitute an assignment or alienation rendered void [by ERISA's anti-alienation provision]" and therefore was not invalidated by ERISA. *Kennedy*, 555 U.S. at 297 (emphasis added). Nonetheless, the Court declared that a plan administrator is "obliged to act 'in accordance with the documents and instruments governing the plan,'" and that "ERISA provides no exemption from this duty when it comes time to pay benefits." *Id.* at 300 (quoting 29 U.S.C. § 1104(a)(1)(D)). Thus, although the ex-wife had waived her right to the pension, the Court concluded that the plan administrator "did its statutory ERISA duty by paying the benefits to [the ex-wife] in conformity with the plan documents." *Id.* at 299-300. In adopting this so-called "plan documents rule," the Court emphasized the desirability of a "straightforward rule of hewing to the directives of the plan documents." *Id.* at 300.

Significantly, although the Supreme Court held that a plan administrator must distribute benefits in accordance with plan documents, it noted the open question of whether another avenue of recovery might be available to the estate. In a footnote, the Court made clear that its holding did not address the question of whether the estate could have sued the ex-wife to recover the benefits after she received them from the plan administrator. *Id.* at 299 n.10 ("Nor do we express any view as to whether the Estate could have brought an action in state or federal court against [the ex-wife] to obtain the benefits after they were distributed."). In light of this footnote, lower courts interpreting *Kennedy* have observed that "the Supreme Court may have closed one door to litigation against plan administrators but it may well have opened another to litigation between family or former family members." *Staelens v. Staelens*, 677 F. Supp. 2d 499, 507 (D. Mass. 2010).

the order applies, and the specific plan impacted by the order. § 1056(d)(3)(B). It is undisputed that the PSA which contains Adele's waiver is not a QDRO.

## C. The District Court's Decision

Adele moved for summary judgment on the ground that she was entitled to the 401(k) proceeds as the named beneficiary. The Estate opposed the motion and cross-moved for summary judgment, arguing that the PSA was a valid contractual waiver and that the proceeds, therefore, belonged to the Estate. Properly relying on *Kennedy*, the District Court had little trouble concluding that, despite Adele's waiver, ERISA required URL to distribute the 401(k) funds to her, as the named beneficiary, in accordance with the plan documents. This conclusion is not challenged on appeal.

The District Court then turned to the question left open in *Kennedy*: whether, once the plan proceeds are distributed to Adele, the Estate may pursue a claim directly against her to enforce her waiver and recover the benefits.[3] Concluding that allowing the Estate to sue Adele would undermine one of ERISA's "principal objectives"—namely, that "named beneficiaries <u>actually</u> receive the benefits of ERISA-governed plans"—the District Court held that "the Estate may not assert a claim against [Adele] regarding the 401(k) proceeds." (App. at 7-8.) This appeal followed.

## II. Jurisdiction and Standard of Review

The 401(k) plan at issue in this dispute is an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1). As such, the District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review over this appeal from the grant of summary judgment. *McGowan v.*

---

[3] Although the 401(k) proceeds have yet to be distributed by URL to Adele, this question is ripe for review because, under *Kennedy* and in accordance with the District Court's unchallenged holding, URL is obligated by law to distribute the funds to Adele pursuant to the plan documents. As such, Adele has a presently enforceable right to the plan proceeds, and the Estate has standing to challenge that right by seeking to enforce Adele's waiver.

6

*NJR Serv. Corp.*, 423 F.3d 241, 244 (3d Cir. 2005), *abrogated on other grounds*, *Kennedy*, 55 U.S. at 291 n.4.

### III. Discussion

Enacted in 1974, ERISA remains a comprehensive and complex scheme for regulating employee benefits plans. "The statute, however, does not address many of the issues which arise in the normal course of the administration of such plans." *Teamsters Pension Trust Fund v. Littlejohn*, 155 F.3d 206, 208 (3d Cir. 1998). In such cases, "it is well settled that Congress intended that the federal courts would fill in the gaps by developing, in light of reason, experience, and common sense, a federal common law of rights and obligations imposed by the statute." *Einhorn v. M.L. Ruberton Constr. Co.*, 632 F.3d 89, 96-97 (3d Cir. 2011) (citation and internal quotations omitted). Relevant to this case, ERISA does not address whether a waiver of benefits can be enforced through a direct suit against a named beneficiary once the benefits have been paid to that beneficiary. We, therefore, look to federal common law in answering that question and, as stated above, answer it in the affirmative.

### A. ERISA's Policy Rationale

*Kennedy* produced what appears to be a somewhat odd result given that the Supreme Court held that a plan administrator must adhere to the plan documents and distribute plan proceeds to the named beneficiary even though that beneficiary had affirmatively waived any claim to those funds. The Court emphasized two important policy considerations in explaining its holding. First, it stated that ERISA's well-established policy favoring uniform and efficient plan administration would be undermined if employers had to consider benefits claims from sources extrinsic to the plan documents, and it stressed the desirability of a "straightforward rule . . . that lets employers 'establish a uniform administrative scheme, with a set of standard procedures to guide processing of claims and disbursement of benefits.'" 555 U.S. at 300 (quoting *Egelhoff v. Egelhoff*, 532

U.S. 141, 148 (2001)). Without such a simple rule, the Court explained, plan administrators would have to bear "the cost of less certain rules":

> Plan administrators would be forced to examine a multitude of external documents that might purport to affect the dispensation of benefits and be drawn into litigation like this over the meaning and enforceability of purported waivers. . . . [I]t would destroy a plan administrator's ability to look at the plan documents and records conforming to them to get clear distribution instructions, without going into court.

*Id.* at 301 (citation and internal quotation omitted); *see also Egelhoff*, 532 U.S. at 149-50 (discussing "the congressional goal of minimizing the administrative and financial burdens on plan administrators").

Second, the Supreme Court explained that its holding was necessary in order to avoid subjecting plan administrators to potential double liability. As the Court noted, ERISA makes clear that plan administrators must pay benefits "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). As such, allowing the estate in *Kennedy* to sue the plan administrator for disbursing plan proceeds to the named beneficiary would have placed the administrator in a hopeless bind: if it honored the waiver, it could be sued by the named beneficiary for disregarding the mandate of ERISA; if it honored the plan documents, it could be sued by the estate for disregarding a federal common law waiver.

These two concerns—the need for the straightforward administration of plans and the avoidance of potential double liability—while central to the Supreme Court's decision in *Kennedy*, are not implicated here. An action brought directly against Adele after the benefits have been distributed would in no way complicate URL's administration of the plan. Unlike in *Kennedy*, a post-distribution suit against Adele

would neither "destroy a plan administrator's ability . . . to get clear distribution instructions, without going to court" nor subject URL to "litigation-fomenting ambiguities." 555 U.S. at 301, 302 (citation and internal quotations omitted). Rather, a suit against Adele would simply require a court to determine the rightful recipient of the plan proceeds as a matter of contract law.[4]

Although the District Court understood that the concerns underlying *Kennedy* did not apply under the circumstances of this case, it stated that in addition to "tidy and cost-effective plan administration," ERISA's statutory scheme also aims to "provid[e] certainty regarding the final distribution of ERISA benefits" to beneficiaries. (App. at 8, 10.) Accordingly, the Court concluded that the possibility of a post-distribution action against a beneficiary would be inimical to ERISA's purposes as it would undermine this "core objective[]" of the statute. (*Id.* at 8-10.) Although the Court's conclusion was not unreasonable, we believe that its assumption about ERISA's continuing solicitude for beneficiaries *after* the distribution of benefits was based on an overreading of *Kennedy*.

The District Court relied heavily on *Kennedy*'s

---

[4] Allowing a post-distribution suit to be brought directly against a named beneficiary would also make sense as a practical matter. First, it would permit the two interested parties to litigate against each other directly, without the plan administrator being caught in the middle. *See Boyd v. Metro. Life Ins. Co.*, 636 F.3d 138, 144 (4th Cir. 2011) (discussing the undesirability of plan administrators having to "throw[] themselves squarely into the center of contentious family disputes"). Second, it would avoid the anomalous scenario in which a valid waiver is rendered worthless because it cannot be enforced against anyone; indeed, the District Court acknowledged the argument that "it does not make sense that the Supreme Court would uphold the validity of common law waivers, but nevertheless hold that ERISA bars a claim to enforce common law waivers." (App. at 12)(conceding that the argument "has merit").

statement that the plan documents rule promotes "simple administration, avoid[s] double liability, and ensur[es] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules." 555 U.S. at 301 (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 283 (7th Cir. 1990) (Easterbrook, J., dissenting) (emphasis added)). The emphasized portion of this statement should not, however, be read in a vacuum or divorced from the context in which it arose. Both *Kennedy* and *Fox Valley* involved suits against plan administrators who had yet to distribute benefits. When read with that in mind, the goal of ensuring that beneficiaries "get what's coming quickly" refers to the expeditious distribution of funds *from plan administrators*, not to some sort of rule providing continued shelter from contractual liability to beneficiaries who have *already received* plan proceeds. In this case, when URL pays the benefits to Adele, as it must, she will "get what's coming" under the plan. If, after distribution, her right to these funds is challenged because of her common law waiver, that challenge will be litigated as an ordinary contract dispute. Accordingly, to the extent that ERISA is concerned with the expeditious payment of plan proceeds to beneficiaries, permitting suits against beneficiaries *after* benefits have been paid does not implicate any concern of expeditious payment or undermine any core objective of ERISA.[5]

---

[5] In support of its conclusion that ERISA continues to protect beneficiaries post-distribution, the District Court also relied on the following introductory language from ERISA's opening section: "It is hereby declared to be the policy of this Act to protect interstate commerce and the interest of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b) (emphasis added); *see also Boggs v. Boggs*, 520 U.S. 833, 845 (1997) ("The principal object of the statute is to protect plan participants and beneficiaries."). The mere mention of "beneficiaries" in the statute's introductory language, however, hardly leads to the conclusion that a contractual waiver of benefits cannot be enforced after a beneficiary has been paid the plan proceeds.

## B. Analogous Case Law

Our conclusion finds further support in the decisions of state appellate courts and in analogous federal cases. The state appellate courts to have considered the question presented here—the Michigan Supreme Court, the Oklahoma Court of Civil Appeals, and the Court of Appeals of Georgia—have all held that an estate may enforce a common law waiver against a designated beneficiary once pension funds have been distributed. *See Sweebe v. Sweebe*, 712 N.W.2d 708 (Mich. 2006); *Pardee v. Pardee*, 112 P.3d 308 (Okla. Civ. App. 2004); *Alcorn v. Appleton*, 708 S.E.2d 390 (Ga. Ct. App. 2011). In *Sweebe*, the Michigan Supreme Court not only anticipated the holding of *Kennedy*, but answered the question left open in *Kennedy*:

> [W]hile a plan administrator must pay benefits to the named beneficiary as required by ERISA, this does not mean that the named beneficiary cannot waive her interest in retaining these proceeds. Once the proceeds are distributed, the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds.

712 N.W.2d at 156. Similarly, in *Pardee*, the Oklahoma court held that a waiver could be enforced via a suit against a named beneficiary because the "pension plan funds were no longer entitled to ERISA protection once the plan funds were distributed." 112 P.3d at 315-16. And in *Alcorn*, the Court of Appeals of Georgia relied on both *Sweebe* and *Pardee* to hold that a decedent's estate could bring suit against the decedent's ex-wife to enforce her waiver since she had already received the plan benefits from the plan administrator. 708 S.E.2d at 392.

That the Estate should be able to bring a post-distribution suit against Adele finds further support in a line of federal cases holding that creditors can sue named beneficiaries to recover plan benefits once those benefits have been distributed. A number of circuits, including our own,

11

have held that even though ERISA prevents a creditor from encumbering pension funds *held by a plan administrator*, the funds are no longer entitled to ERISA's protections against the creditor's claims *once they are paid to the beneficiary.* *See Trucking Emps. of N. Jersey Welfare Fund v. Colville*, 16 F.3d 52, 55 (3d Cir. 1994) ("We have recognized . . . a difference between funds remaining in the possession of an ERISA plan trustee and funds that have been distributed to the beneficiary."); *see also Kickham Hanley P.C. v. Kodak Ret. Income Plan*, 558 F.3d 204, 211 (2d Cir. 2009) ("Only once the proceeds of the pension plan have been released to the beneficiary's hands, can creditors and others pursue claims against the funds and the funds' owner(s)."); *DaimlerChrysler Corp. v. Cox*, 447 F.3d 967, 974 (6th Cir. 2006) ("This circuit, along with a majority of the other circuits, has held that once benefit payments have been disbursed to a beneficiary, creditors may encumber the proceeds."); *Hoult v. Hoult*, 373 F.3d 47, 54-55 (1st Cir. 2004) (same); *United States v. Jackson*, 229 F.3d 1223, 1225 (9th Cir. 2000) (same), *overruled in part by United States v. Novak*, 476 F.3d 1041 (9th Cir. 2007); *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 716 (10th Cir. 1993) (same). In each of these cases, the court held that once the benefits were distributed to the designated beneficiary in accordance with the plan documents, ERISA was no longer implicated. The same principle is equally applicable here. More specifically, if a creditor can enforce its rights against a beneficiary once pension funds have been distributed, we see no reason why the Estate should not be able to enforce its contractual rights against Adele once URL disburses the funds.

Despite this caselaw, Adele argues that the District Court should be affirmed in light of *Boggs v. Boggs*, 520 U.S. 833 (1997), and *Staelens v. Staelens*, cited earlier. We find neither case to be persuasive under the circumstances of this case. In *Boggs*, the Supreme Court held that ERISA preempted a state community property law, and stated that "the diversion of retirement benefits will occur regardless of whether the interest in the pension plan is enforced against the plan or the recipient of the pension benefit." 520 U.S. at 853.

12

The "interest" at issue in *Boggs,* however, was an "interest in *undistributed* pension plan benefits." *Id.* at 836 (emphasis added). Here, of course, the question is whether the Estate can sue Adele *after* the funds have been distributed to her.[6]

*Staelens* is similarly inapposite. There, the District Court of Massachusetts held that a decedent's estate could not sue the decedent's ex-wife to enforce her purported waiver, but based its decision on the fact that the language of the divorce decree "lack[ed] the specificity" required for a valid common law waiver. 677 F. Supp. 2d at 510. Prior to reaching this conclusion, the court did state that allowing a decedent's estate to sue a named beneficiary to enforce a waiver "would appear to go against the various interests

[6] Other courts considering the question before us have held that *Boggs* is distinguishable for the same reason. *See Pardee*, 112 P.3d at 313-14 ("As *Boggs* involved pre-distribution funds as opposed to distributed funds, as in the present case, this Court finds *Boggs* distinguishable and, here, inapplicable."); *see also Sweebe*, 712 N.W.2d at 713 (distinguishing *Boggs* on the ground that it involved "proceeds from an undistributed pension plan"); *Alcorn*, 708 S.E.2d at 392 (finding *Boggs* unpersuasive because it "involved pre-distribution funds still in control of the plan administrator"). *Boggs* is further distinguishable because it involved an attempted testamentary transfer of an interest in pension benefits that constituted "a prohibited 'assignment or alienation'" under 29 U.S.C. § 1056(d)(1). 520 U.S. at 851. The *Boggs* Court explained that Congress prohibited such assignments out of a concern that "retirees could find their retirement benefits reduced by substantial sums because they have been diverted to testamentary recipients." *Id.* at 852. In this case, however, Adele's waiver is a simple relinquishment of benefits and not an attempt to assign benefits to another party or to "divert" funds away from plan participants or beneficiaries. Thus, the concern of *Boggs*—"that retirement funds are there when a plan's participants and beneficiaries expect them"—is not implicated by a waiver that is no more than "a mechanism for simply renouncing a claim to benefits." *Kennedy*, 555 U.S. at 296.

which the Supreme Court [in *Kennedy*] deemed served by a uniform administrative scheme." *Id.* at 508. The court, however, then "acknowledge[d] that the First Circuit itself . . . appears to have treated distributed funds differently, albeit in a somewhat different context." *Id.* (citing *Hoult*, 373 F.3d at 54). Recognizing what appeared to be the law of the circuit in which it sat, the court avoided the question of whether the estate could sue the ex-wife directly and instead based its decision on narrow grounds related to the specificity of the contract language.

### C. Adele's State Law Argument

Finally, Adele contends that even if we determine that the Estate can bring suit against her to enforce her waiver, we should nonetheless affirm the District Court because, despite the fact that she waived her right to the 401(k) proceeds,[7] William, who died intestate, "chose to give his 401K to [her] after he died." (Appellees' Br. at 5.) This argument was neither raised in the District Court nor mentioned in the Court's opinion, and we do not address it further.

### IV. Conclusion

For the foregoing reasons, we will affirm in part and reverse in part the order of the District Court. The cause will be remanded to the District Court with instructions to assess the necessity of a further remand to state court to address the merits of any remaining state law issue.

---

[7] Although the District Court did not address whether the waiver contained in the PSA was valid as a matter of federal common law, Adele concedes its validity. (*See* Appellees' Br. at 5 ["Ms. Kensinger did indeed give up her right to Mr. Kensinger's 401K."].) Moreover, the language of Adele's waiver is similar to waiver language that has been deemed valid in other cases, *see, e.g.*, *Altobelli v. Int'l Bus. Machs. Corp.*, 77 F.3d 78, 80-81 (4th Cir. 1996), *overruled on other grounds by Kennedy*, 555 U.S. 285, and there is no suggestion that Adele's waiver was not knowing, not voluntary, or not made in good faith.