**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Jeffrey FLINKSTROM, et al., Defendants.**

**No. CIV.A.02–12309–JLT.**

United States District Court, D. Massachusetts.

Feb. 17, 2004.

James F. Kavanaugh, Jr., Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, Boston, MA, for Plaintiff.

Robert F. Casey, Harvard, MA, Janie L. Vowles, Roncone Law Offices, P.C., Leominster, MA, for Defendants.

## MEMORANDUM

TAURO, District Judge.

This is an interpleader action filed by Metropolitan Life Insurance Company ("MetLife") to determine the proper recip-

ient of the life insurance proceeds of Donald E. Flinkstrom ("Decedent"). The underlying dispute is between Terri A. Hall ("Hall"), Decedent's former wife, and Darin Flinkstrom ("Darin"); one of Decedent's four children, over the proper beneficiaries of Decedent's life insurance policy. Hall claims that she is the proper beneficiary because she is listed as the primary beneficiary of the policy on a beneficiary designation form that Decedent completed in 1984. Darin, however, claims that Hall waived her benefits and, therefore, the proceeds of the policy should pass in equal shares to Decedent's children pursuant to the laws of intestacy. He also argues that the proceeds should pass in equal shares to Decedent's children because they are named as the primary beneficiaries of the policy on two beneficiary designation forms, one that was completed in 2000 and one that was completed in 2001. Presently before this court are Hall and Darin's cross-motions for summary judgment.

## Background

Decedent, an employee of General Electric Company ("GE"), was a participant in the GE Life, Disability, and Medical Plan ("Plan").[1] The Plan is an employee benefit plan and is, therefore, governed by the Employee Retirement Income Security Act of 1974 ("ERISA").[2] As a part of his employment benefits under the Plan, Decedent received a life insurance policy.[3] MetLife is the claims administrator for, and insurer of, that policy.[4]

Decedent and Hall were married on August 28, 1982.[5] Hall was Decedent's second wife.[6] Decedent and Hall had two children together, Brandon S. Flinkstrom ("Brandon") and Ashley L. Flinkstrom ("Ashley").[7] Decedent also had two children from a prior marriage, Jeffrey E. Flinkstrom ("Jeffrey") and Darin.[8]

On January 31, 1984, Decedent completed a Beneficiary Designation Form ("1984 Form") that named his then-wife Hall as the primary beneficiary of his life insurance policy and his son Brandon as the contingent beneficiary.[9] The policy contained the following provision that addressed how an insured could change his beneficiary designations: An employee

> may change beneficiary designations at any time by calling the GE Enrollment Center ... or by contacting [a] human resources representative to request a new beneficiary designation form. [The employee must] complete the new form and return it to the Enrollment Center. When a change of beneficiary notice is received, it becomes effective on the date ... the request [was signed].[10]

---

1. Compl. for Interpleader ("Compl.") ¶ 9.

2. *Id.; see* 29 U.S.C. § 1144(a).

3. *See* Compl. ¶ 9.

4. *Id.* ¶ 10.

5. Marital Agreement, submitted in supp. of Mot. of Def. Darin E. Flinkstrom for Summ. J. on Compl. for Interpleader and Cross-Claim Against Terri Hall, Ex. D ("Marital Agreement") at 1.

6. Dep. of Terri A. Hall, submitted in supp. of Mot. of Def. Darin E. Flinkstrom for Summ. J. on Compl. for Interpleader and Cross-Claim Against Terri Hall, Ex. A ("Hall Dep.") at 7.

7. *Id.* at 6.

8. *Id.* at 7.

9. 1984 Beneficiary Designation Form, submitted in supp. of Mot. of Def. Darin E. Flinkstrom for Summ. J. on Compl. for Interpleader and Cross-Claim Against Terri Hall, Ex. C ("1984 Form").

10. Excerpt from the Life Insurance Policy, submitted in supp. of Mot. of Def. Darin E. Flinkstrom for Summ. J. on Compl. for Interpleader and Cross-Claim Against Terri Hall, Ex. B at 168.

Decedent and Hall separated in 1997.[11] In 1998, Hall initiated a divorce action in the Middlesex Probate and Family Court.[12] On December 30, 1999, Decedent and Hall executed a marital agreement.[13] The agreement merged into, and became, the final judgment of the Middlesex Probate and Family Court.[14] With regard to Decedent's life insurance policy, the agreement provides as follows: Decedent "shall maintain each of the [four] minor children as twenty-five ... percent beneficiaries of his current life insurance coverage issued by [GE] and/or death benefits ...." [15]

During the divorce proceedings, Hall was represented by counsel.[16] She consulted with her attorney before she executed the marital agreement, and her attorney answered all of the questions that she had concerning the content of that agreement.[17] Hall signed the agreement "freely and voluntarily." [18] And, when she signed the agreement, she was aware of both the existence of the life insurance policy and that, pursuant to the 1984 Form, she was the primary beneficiary of that policy.[19]

On September 6, 2000, Decedent attempted to remove Hall from her status as the primary beneficiary of his life insurance policy by executing a new Beneficiary Designation Form ("2000 Form").[20] The 2000 Form names Brandon, Ashley, Jeffrey, and Darin as the primary beneficiaries of Decedent's life insurance policy.[21] The 2000 Form was mailed to MetLife in September of 2000.[22]

Shortly thereafter, Decedent informed Darin that he had been diagnosed with cancer and asked Darin to start handling his personal and financial affairs.[23] Darin agreed to do so, and at Decedent's request, he began to open and handle Decedent's mail, pay Decedent's bills, and perform other like tasks.[24]

In mid-August of 2001, Darin, while opening Decedent's mail, discovered a letter from GE that was dated August 14, 2001.[25] The letter stated that, although it was in possession of the 2000 Form, it could not make the changes to the life insurance policy that Decedent desired because "[t]he signature on [the F]orm [was] more than [six] months old" when it was initially processed, and for that reason, the Form is "invalid." [26] The letter asked De-

11. Hall Dep. at 9.

12. *See* Marital Agreement at 1.

13. *Id.* at 6.

14. J. of the Middlesex Probate and Family Court, submitted in supp. of Mot. of Def. Darin E. Flinkstrom for Summ. J. on Compl. for Interpleader and Cross–Claim Against Terri Hall, Ex. D.

15. Marital Agreement at 13.

16. Hall Dep. at 10.

17. *Id.* at 11.

18. *Id.*

19. *Id.* at 12–13; *see* Terri A. Hall's Mot. for Summ. J. with Mem. at 2 (The marital "agree-

ment ... sought to resolve issues between the parties, including life insurance issues.").

20. *See* 2000 Beneficiary Designation Form, submitted in supp. of Mot. of Def. Darin E. Flinkstrom for Summ. J. on Compl. for Interpleader and Cross–Claim Against Terri Hall, Ex. E.

21. *See id.*

22. Aff. of Darin Flinkstrom ("Darin Aff.") ¶ 4.

23. *Id.* ¶¶ 5–6.

24. *Id.* ¶ 6.

25. *Id.* ¶ 7.

26. August 14, 2001 Letter, submitted in supp. of Darin Aff., Ex. A ("2001 Letter"). Hall claims that the 2000 Form is invalid because

cedent to "complete and return [to GE a] new beneficiary form . . . ."[27]

After Darin informed Decedent of the content of the August 14, 2001 letter, Darin claims that Decedent "ask[ed him] to 'take care of it.' "[28] Darin "took care of it" by filling out a new Beneficiary Designation Form ("2001 Form") that was entirely consistent with the 2000 Form.[29] Darin signed Decedent's name to the 2001 Form and mailed it to GE.[30] The 2001 Form was dated August 21, 2001.[31]

Decedent died on December 20, 2001.[32] On March 5, 2002, Jeffrey and Darin filed claims for the proceeds payable under Decedent's life insurance policy with MetLife.[33] On March 11, 2002, Brandon also filed with MetLife a claim for the life insurance proceeds.[34] On March 26, 2002, Hall requested that the proceeds not be paid to Decedent's children.[35] She made that request because she believed that Decedent's "beneficiary documentation may have been tampered with."[36] The life insurance proceeds in issue total $42,318.[37]

On November 27, 2002, MetLife commenced an interpleader action in this court in order to determine the proper beneficiaries of Decedent's life insurance policy. It named as defendants Hall, Brandon, Ashley, Jeffrey, and Darin. Subsequent to the filing of that interpleader action, Hall instituted a separate action against MetLife, Darin, and Jeffrey in order to acquire the full amount of the proceeds of the life insurance policy in question. On May 7, 2003, this court consolidated the two actions.

## Discussion

Hall and Darin have filed cross-motions for summary judgment. A motion for summary judgment is meant "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required."[38] Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only if the record reveals that there is "no genuine issue as to any material fact and . . . the moving party [has demonstrated an] entitle[ment] to a judgment as a matter of law."[39]

---

it "applied only to a particular type of coverage that was not in force." Terri A. Hall's Mot. for Summ. J. with Mem. at 2. Although there appears to be a dispute concerning why the 2000 Form is invalid, there is no dispute that the 2000 Form is, indeed, invalid.

27. 2001 Letter.

28. Darin Aff. ¶ 8.

29. *Id.* ¶ 9.

30. *Id.*

31. 2001 Beneficiary Designation Form, submitted in supp. of Mot. of Def. Darin E. Flinkstrom for Summ. J. on Compl. for Interpleader and Cross–Claim Against Terri Hall, Ex. F.

32. Compl. ¶ 11.

33. *Id.* ¶¶ 12–13.

34. *Id.* ¶ 14.

35. *Id.* ¶ 15.

36. *Id.*

37. *Id.* ¶ 11.

38. *Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir.1999) (quoting *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992)), *cert. denied*, 528 U.S. 811, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999).

39. Fed.R.Civ.P. 56(c). "In the lexicon of Rule 56, 'genuine' connotes that the evidence on the point is such that a reasonable jury, drawing favorable inferences, could resolve the fact in the manner urged by the nonmoving party, and 'material' connotes that a contested fact has the potential to alter the outcome of the suit under the governing law if the controversy over it is resolved satisfactorily to the nonmovant." *Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir.1996).

It is the responsibility of the "party seeking summary judgment [to] make a preliminary showing that no genuine issue of material fact exists. Once the movant has made this showing, the nonmovant must contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue."[40]

In deciding whether to allow a motion for summary judgment, a court " 'must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.' "[41] But, a court "need not credit 'conclusory allegations, improbable inferences, and unsupported speculation.' "[42]

Of course, "[t]he happenstance that all parties seek summary judgment neither alters the yardstick nor empowers the trial court to resolve authentic disputes anent material facts."[43] A court considering cross-motions for summary judgment "must evaluate each motion separately, being careful to draw inferences against each movant in turn."[44]

## A. *Waiver of the Proceeds of Decedent's Life Insurance Policy*

The key issue before this court is whether Hall, Decedent's former spouse and the individual who was designated as the primary beneficiary of Decedent's life insurance policy when he died,[45] effectively waived her benefits via the marital agreement that was incorporated into the judgment of divorce. The agreement provides, in relevant part, that Decedent "shall maintain each of the [four] minor children as twenty-five ... percent beneficiaries of his current life insurance coverage issued by [GE] and/or death benefits ...."[46]

■ Before this court addresses the waiver issue that has been outlined above, it must first decide whether to apply state or federal law to resolve that issue. And, "[a]lthough it seems logical that state law would control, the interpretation of a marital termination agreement ordinarily being a matter of state law," state law does not govern the outcome of this type of case.[47] Congress has "mandated that ERISA 'shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by the statute."[48] There is no dispute

---

40. *Id.* (quoting *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995), *cert. denied*, 515 U.S. 1103, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995)).

41. *Mullin*, 164 F.3d at 698 (quoting *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990)).

42. *Bloomfield v. Bernardi Automall Trust*, 170 F.Supp.2d 36, 40 (D.Mass.2001) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)).

43. *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990).

44. *Id.*

45. This court believes that the 1984 Form is the controlling beneficiary designation form, and it lists Hall as the primary beneficiary of Decedent's life insurance policy. *See* 1984 Form. Darin argues that the 1984 Form is not the controlling beneficiary designation form. He maintains that this court should give legal effect to either the 2000 Form or the 2001 Form. But, both of those forms are invalid. There is, after all, no question that Decedent knew that the 2000 Form was considered to be "invalid." 2001 Letter. And, Decedent neither prepared nor signed the 2001 Form. *See* Darin Aff. ¶ 9.

46. Marital Agreement at 13.

47. *Mohamed v. Kerr*, 53 F.3d 911, 913 (8th Cir.1995), *cert. denied*, 516 U.S. 868, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995).

48. *Brandon v. Travelers Ins. Co.*, 18 F.3d 1321, 1325 (5th Cir.1994) (quoting 29 U.S.C. § 1144(a)), *cert. denied*, 513 U.S. 1081, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995).

that the life insurance policy in issue is part of an "employee benefit plan" and, hence, falls within the scope of ERISA's coverage.[49] Courts, moreover, have uniformly held that "[t]he determination of the beneficiary of the proceeds of an insurance policy plainly relates to an employee benefit plan."[50] ERISA, therefore, preempts the application of state law in this case. So, in resolving the waiver issue in this case, this court must look either to the language of the ERISA statute or, if that language does not provide the answer, to the body of federal common law that interprets that statute.[51]

Having decided that ERISA preempts the application of state law in this case, this court may now return its attention to the issue of whether, in a marital agreement that has been incorporated into a divorce judgment, a spouse may effectively waive his beneficiary interest in an ERISA-regulated plan. Courts that have addressed this issue "have split as to whether ERISA itself supplies the rule of law or whether judges must look to federal common law for the controlling principles."[52]

A minority of the courts that have considered this issue have decided that Section 1104(a)(1)(D) of ERISA specifically addresses the issue and mandates "that a clear beneficiary designation under an ERISA plan may not be disturbed by a waiver in external documents."[53] They note that Section 1104(a)(1)(D) "requires plan administrators to perform their obligations 'in accordance with the documents and instruments governing the plan.'"[54] With that statutory command in mind, these courts argue that "a divorce settlement cannot waive pension plan benefits when a clear designation has been made on the plan documents."[55] They maintain that a plan administrator should be required to look only to plan documents to discharge his duties. And, they point out that this approach is consistent with "the intent of Congress that ERISA plans be uniform in their interpretation and simple in their application."[56]

The majority of the courts that have considered the issue, however, have held that, because "there is no specific provision in ERISA that governs the issue of what acts constitute a valid waiver of benefits," it is proper to look beyond the language of ERISA and apply federal common law in deciding whether a spouse may effectively waive his beneficiary interest in an ERISA-regulated plan.[57] When

---

**49.** See 29 U.S.C. § 1144(a); *Metro. Life Ins. Co. v. Pettit*, 164 F.3d 857, 860–61 (4th Cir. 1998) (noting that ERISA "defines [an] employee benefit plan as a welfare or pension benefit plan," and that it "states that [a] life insurance plan[] qualif[ies] as [a] welfare plan[]").

**50.** *E.g.*, *Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1195 (11th Cir.1991) (citing *McMillan v. Parrott*, 913 F.2d 310, 311 (6th Cir.1990)).

**51.** *See, e.g.*, *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 278 (7th Cir.1990), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).

**52.** *Brandon*, 18 F.3d at 1325.

**53.** *Estate of Zienowicz v. Metro. Life Ins. Co.*, 205 F.Supp.2d 339, 343 (D.N.J.2002); *see Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir.1993); *McMillan*, 913 F.2d at 311–12.

**54.** *Estate of Zienowicz*, 205 F.Supp.2d at 342 (quoting 29 U.S.C. § 1104(a)(1)(D)).

**55.** *Id.* at 343; *see McMillan*, 913 F.2d at 311–12.

**56.** *E.g.*, *McMillan*, 913 F.2d at 312.

**57.** *Estate of Zienowicz*, 205 F.Supp.2d at 343; *see, e.g.*, *Estate of Altobelli v. Int'l Bus. Machs. Corp.*, 77 F.3d 78, 80–82 (4th Cir.1996); *Mohamed v. Kerr*, 53 F.3d 911, 914–15 (8th Cir.

ERISA is silent on an issue, courts, as a general rule, may "turn to state law" for guidance when they initially fashion federal common law rules to govern ERISA suits, so long as the state law is consistent with ERISA and its underlying policies.[58]

According to the federal common law rule that has emerged, "ERISA does not preempt an explicit waiver of interest by a nonparticipant beneficiary of" an ERISA-regulated benefits plan.[59] The rule "require[s] proof of a specific termination of the rights in question in order to effectively waive a beneficiary's interest under an ERISA-regulated plan."[60] An alternative "formulation of th[at] princip[le] mandates that an attempted waiver by a designated beneficiary of an ERISA-regulated benefits plan be 'explicit, voluntary, and made in good faith' to be considered valid."[61] At least one court has declared that, however the rule is stated, when a court "evaluat[es] whether [a] waiver is effective in a given case, [it should be] more concerned with whether a reasonable person would have understood that she was waiving her interest in the proceeds or benefits in question than with any magic language contained in the waiver itself."[62]

■ The First Circuit has not yet addressed the issue of whether a spouse may waive his rights to a benefit under an ERISA-regulated plan through a statement in a marital agreement that is incorporated into a divorce judgment. This court agrees with the position that has been taken by the majority of courts that have considered the issue and will, therefore, allow a voluntary waiver of interest, so long as that waiver is unambiguous.

To be sure, "one of ERISA's purposes is to facilitate 'uniform, uncomplicated administration' of [benefit] plans."[63] But, this court does not think that the majority approach "work[s] against ERISA's need for uniformity [or] bring[s] uncertainty

1995), *cert. denied*, 516 U.S. 868, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995); *Brandon*, 18 F.3d at 1326–27; *Metro. Life Ins. Co. v. Hanslip*, 939 F.2d 904, 907 (10th Cir.1991); *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown*, 897 F.2d 275, 280–82 (7th Cir.1990), *cert. denied*, 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).

**58.** *Fox Valley & Vicinity Constr. Workers Pension Fund*, 897 F.2d at 281; *see, e.g., Mohamed*, 53 F.3d at 913.

**59.** *E.g., Melton v. Melton*, 324 F.3d 941, 945 (7th Cir.2003); *see, e.g., Mohamed*, 53 F.3d at 914 ("[U]nder federal common law, a settlement entered into pursuant to a judgment of dissolution may divest a former spouse of beneficiary rights to life insurance proceeds, even when the beneficiary designation has not been changed before the death of the insured.").

**60.** *Melton*, 324 F.3d at 945.

**61.** *Id.* at 945 (quoting *Manning v. Hayes*, 212 F.3d 866, 874 (5th Cir.2000), *cert. denied*, 532 U.S. 941, 121 S.Ct. 1401, 149 L.Ed.2d 345

(2001)); *see also Brandon*, 18 F.3d at 1327 ("requiring under federal common law that any waiver of ERISA benefits be explicit, voluntary, and made in good faith").

**62.** *Melton*, 324 F.3d at 945–46; *see Mohamed*, 53 F.3d at 914–15 ("[A] property settlement entered into pursuant to a dissolution may divest former spouses of beneficiary rights in each other's life insurance policies, if the agreement makes it clear that the former spouses so intend."). The law of Massachusetts is not in conflict with the federal common law rule that has emerged. *See Stiles v. Stiles*, 21 Mass.App.Ct. 514, 487 N.E.2d 874, 875 n. 3 (1986) ("Divorce does not revoke a designation of beneficiary unless the matter is expressly touched upon in the divorce proceedings or the insurance contract so provides.").

**63.** *E.g., Estate of Altobelli v. Int'l Bus. Machs. Corp.*, 77 F.3d 78, 80 (4th Cir.1996) (quoting *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 16 (2d Cir.1993)).

into the administration of ... plan[s]." [64] First, "federal courts are charged with creating federal common law rules to. govern ERISA, ... and the creation of such federal rules ... provide[s] the needed uniformity." [65] And second, the majority approach will not impose additional burdens on plan administrators. Currently, "under the ERISA statutory scheme, a plan administrator must investigate the marital history of a participant and determine whether any [qualified] domestic relations orders exist that could affect the distribution of benefits." [66] The majority approach "only requires plan administrators to continue their current practice of thoroughly investigating the marital status of a participant." [67]

■ Because this court has decided that it is possible for a spouse to waive his rights to a benefit under an ERISA-regulated plan through a marital agreement that is incorporated into a divorce judgment, it must now determine whether there was an effective waiver in this case. That is, in view of the various formulations of the federal common law rule, this court must now decide whether the marital agreement was voluntarily entered into and whether Hall should have understood that she was waiving her interest in the proceeds of Decedent's life insurance policy when she executed that agreement. [68]

There was an effective waiver in this case. It is clear that the marital agreement was voluntarily entered into and that Hall should have understood that she was waiving her status as beneficiary of Decedent's life insurance policy when she executed that agreement. There is no evidence in the record that indicates that the marital agreement was anything but voluntarily entered into. [69] And, there can be no question that the agreement specifically refers to Decedent's life insurance policy. It provides that Decedent "shall maintain each of the [four] minor children as twenty-five ... percent beneficiaries of his current life insurance coverage issued by [GE] and/or death benefits ...." [70] Although the agreement does not use the terms "waive" or "waiver" when it addresses the life insurance policy, Hall should have understood from the language of the agreement that it would act to di-

---

64. *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 281 (7th Cir.1990), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).

65. *Id.* at 281–82.

66. *Id.* at 282. This court refers to qualified domestic relations orders "only to point out that there are situations when ERISA requires plan administrators to consult documents outside the plans themselves." *Estate of Altobelli,* 77 F.3d at 81 n. *.

67. *Fox Valley & Vicinity Constr. Workers Pension Fund,* 897 F.2d at 282. Similarly, the Fourth Circuit has declared that:

> giving effect to a waiver contained in a domestic relations order. does not burden plan administrators in a manner violative of ERISA. ERISA was designed to simplify plan administration as much as possible, but it still requires administrators to consider divorce decrees to determine whether they are Qualified Domestic Relations Orders,[ ] which are enforceable.... Thus, ... "[n]o such additional burdens will be imposed" by enforcing waivers.

> *Estate of Altobelli,* 77 F.3d at 81 (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund,* 897 F.2d at 282) (second alteration in original).

68. *See Melton v. Melton,* 324 F.3d 941, 945–46 (7th Cir.2003); *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1326–27 (5th Cir.1994), *cert. denied,* 513 U.S. 1081, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995).

69. In fact, Hall has admitted that she "freely and voluntarily" entered into the agreement. Hall Dep. at 11.

70. Marital Agreement at 13.

vest her of her interest in that policy. After all, the agreement required Decedent to "maintain each of [his four] minor children as twenty-five . . . percent beneficiaries of his" life insurance policy.[71] In other words, it required Decedent to designate his children as the one hundred percent beneficiaries of the policy. Given that Hall consulted with her attorney before she executed the agreement,[72] and that she was aware that she had previously been designated as the primary beneficiary of the policy,[73] she should have realized that she was waiving her status as primary beneficiary of the policy when she executed the agreement.

### B. Distribution of the Proceeds of Decedent's Life Insurance Policy

 This court's final responsibility is to determine the proper beneficiaries of Decedent's life insurance policy. Because Hall effectively waived her benefits under the policy, she is not entitled to receive any of the proceeds of the policy. But, despite Darin's contention to the contrary, it does not follow that Decedent's four children are each entitled to receive an equal share of the proceeds. The 1984 Form remains the controlling beneficiary designation form.[74] And, it identifies Hall as the primary beneficiary and Brandon as the contingent beneficiary of the policy.[75] Because Hall effectively waived her right to receive the proceeds of the policy, Brandon, as the contingent beneficiary, is entitled to receive all of the proceeds.[76]

71. *Id.*

72. Hall Dep. at 11.

73. *Id.* at 12–13.

74. *See supra* note 45.

75. *See* 1984 Form.

76. *See, e.g., Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d

### Conclusion

For the foregoing reasons, Hall's motion for summary judgment is DENIED, and Darin's motion for summary judgment is ALLOWED IN PART and DENIED IN PART.

AN ORDER WILL ISSUE.

275, 277–78, 282 (7th Cir.1990) (indicating that if a primary beneficiary waives his interest in an ERISA-regulated plan, the contingent beneficiary is entitled to the same benefits that he would have received had the primary beneficiary predeceased the contingent beneficiary), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).