**Karen M. STAELENS, Administratrix of the ESTATE OF Aaron J. STAELENS, Plaintiff**

v.

**Nadine STAELENS, Defendant.**

**Civil Action No. 08–30159–KPN.**

United States District Court, D. Massachusetts.

Jan. 11, 2010.

John C. Gates Callahan, George L. Goodridge, III, Curtiss, Carey, Gates, Graves & Gooldridge LLP, Greenfield, MA, for Defendant.

Mark A. Tanner, Bacon Wilson, P.C., Morse & Sacks, Northampton, MA, for Plaintiff/Defendants.

*MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFF'S MOTION TO REMAND (Document No. 17), PLAINTIFF'S MOTIONS TO STRIKE (Document Nos. 18 and 19) AND CROSS–MOTIONS FOR SUMMARY JUDGMENT (Document Nos. 14 and 20)*

NEIMAN, United States Magistrate Judge.

This dispute concerns the proceeds of a 401(k) profit sharing account of the late Aaron Staelens ("Aaron"). Aaron's mother, Karen Staelens ("Karen"), as administratrix of his estate, filed this declaratory judgment action against Aaron's former wife, Nadine Staelens ("Nadine"). Nadine, in turn, filed a declaratory judgment counterclaim. The parties have consented to the jurisdiction of this court pursuant to 28 U.S.C. § 636(c) and submitted cross-motions for summary judgment.[1]

For the reasons which follow, Karen's motion for summary judgment will be denied and Nadine's motion will be allowed. Relatedly, Karen's motion to remand the case to state court (Document No. 17) will be denied and her motions to strike (Document Nos. 18 and 19) will be granted in part.

## I. BACKGROUND

Except as otherwise noted, the following facts are undisputed. Nadine and Aaron married in Conway, Massachusetts, on September 23, 1989. (Def.'s Facts ¶ 1.) Nearly fifteen years later, on September 9, 2004, they were divorced by a Judgment of Divorce Nisi entered by the Franklin County Probate and Family Court pursuant to the provisions of Mass. Gen.L. ch. 208, § 1A. (*Id.* ¶¶ 2, 3.) The judgment, among other things, directed Nadine and Aaron to comply with the terms of the agreement they filed with the Probate Court on July 22, 2004. (*Id.* ¶ 4.) The judgment incorporated the terms of the Separation Agreement but indicated that the agreement survived as an independent contract. (*Id.* ¶ 5.)

During the course of the marriage, Aaron was employed as a truck driver at Rice Oil Co., Inc. ("Rice Oil") in Greenfield. (*Id.* ¶ 6.) On September 13, 2001, Aaron completed a designation of beneficiary form for Rice Oil's 401(k) profit sharing plan. (*Id.* ¶ 7.) The form named Nadine as the beneficiary of Aaron's 401(k) account, listing her as Aaron's "spouse." (*Id.* ¶ 8; Pl.'s Response ¶ 8.) Thereafter, Aaron never filed or completed another form either removing Nadine or naming another individual as his 401(k) beneficiary. (Def.'s Facts ¶ 9.)

In any event, Nadine retained Thomas O'Connor as her divorce attorney, a mutual friend of both Aaron and Nadine. (*Id.* ¶¶ 12, 13; Pl.'s Response ¶ 13.) He prepared the Separation Agreement, Petition for Divorce and, possibly, the required Financial Statements as well. (Def.'s Facts ¶ 14.)

The Separation Agreement, in Article Seven, includes the following language: "Husband will retain his ... savings and credit union accounts and his retirement (401 K) while Wife will retain ... her savings and IRA and checking ac-

---

1. The action also originally involved the proceeds of Aaron's life insurance policy, but Karen indicated in her summary judgment papers and at oral argument that, as administratrix of his estate, she "makes no further claims regarding [the] life insurance proceeds." (Doc. No. 23 ("Pl.'s Brief") at 4; see also Joint Stipulation to Entry of Partial Judgment (Life Insurance Proceeds) (Doc. No. 28).)

counts. . . . Each party has a life insurance policy with which they may do what they wish." (*Id.* ¶ 15; Complaint, Exhibit.) Below this language, in handwriting, is the following sentence: "Each party agrees that they [sic] will retain their separate pension agreements and plans except as stated above and renounce any interest in the pension of the other." (Def.'s Facts ¶ 16.) This language, which was inserted at the request of the judge to address what he perceived was an omission in the agreement, was initialed by both parties. (*Id.* ¶¶ 17, 18.)

The Separation Agreement also includes the following language in Article Ten:

> Except as provided herein, the Husband and Wife each hereby waives any right at law or in equity to take against any last Will, and by the other, including the rights of the elective share, dower or courtesy and hereby waives, renounces, and relinquishes unto the other, their respective heirs, executors, administrators and assigns forever, all and every interest of any kind or character which either may now have or may hereinafter acquire in or to any real or personal property of the other and whether now owned or hereinafter acquired by either.

(*Id.* ¶ 19.) At her deposition, Nadine testified that she did not understand the meaning of Article Ten.(*Id.* ¶ 20.) However, she also testified—with regard to the application of Articles Seven and Ten—that she understood that the agreement prevented her from being able to ask for a portion of the 401(k) account while Aaron was still alive. (*Id.* ¶ 21.) Nadine also testified to her understanding that the agreement prevented·her from changing her mind in the future and asking for a portion of the 401(k) account. (*Id.* ¶ 22.) Nonetheless, Nadine also understood that the Agree-

ment would not prevent her from acting as Aaron's beneficiary in the event he elected to continue to name her as such. (*Id.* ¶ 23)

Following their divorce, Nadine and Aaron's relationship was "friendly." (*Id.* ¶ 24; Pl.'s Response ¶ 24.) They spoke on the phone "almost weekly" and saw one another "once a month." (Def.'s Facts ¶ 25; Pl.'s Response ¶ 25.) Unfortunately, on March 28, 2008, Aaron died of injuries sustained in an automobile accident. (*Id.* ¶ 34.) At the time, the Rice Oil 401(k) policy still named Nadine as the designated beneficiary. (*Id.* ¶ 35; Pl.'s Response ¶ 35.) The money from Aaron's 401(k) account has since been transferred to an account established in Nadine's name. (Pl.'s Brief at 4.)

After his death, Aaron's mother, Karen, contacted Nadine and asked that she sign papers which would effectively waive her right to receive the beneficiary interest in both the life insurance and 401(k) accounts. (Def.'s Facts ¶ 37.)[2] Nadine declined to sign the papers. Karen's counsel subsequently contacted Nadine's counsel and asked that Nadine sign a disclaimer and renunciation of any interest in the 401(k) plan. (*Id.* ¶ 38.) Again, Nadine declined. (*Id.* ¶ 39.)

In June of 2008, Karen, as executrix of Aaron's estate, initiated this one-count declaratory judgment action in state court. Citing the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.,* Nadine removed the action to this forum. At the initial scheduling conference on November 6, 2008, the court ordered, with the mutual consent of the parties, that Nadine not transfer or use any of the funds from the life insurance or 401(k) accounts.

Following discovery, Nadine filed a motion for summary judgment. In response,

---

**2.** See n. 1 as to the life insurance.

Karen filed a cross-motion for summary judgment, two motions to strike, and a motion to remand the matter to state court.

## II. KAREN'S MOTION TO REMAND

Although she did not object to Nadine's removal of this matter from state court, Karen now seeks a remand based on *dicta* in a recently decided Supreme Court case, *Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan,* — U.S. ——, 129 S.Ct. 865, 172 L.Ed.2d 662 (2009). *Kennedy,* which will be discussed in greater detail below, involved an ex-wife who signed a waiver in her divorce agreement but nonetheless remained as the beneficiary of her ex-husband's retirement plan at the time of his death. Karen argues that *Kennedy* calls for a remand here because, in footnote 10 thereof, the court implied that, when proceeds have been distributed to a former spouse, the operative question becomes one of "common-law" waiver. (See discussion *infra.*)

The parties agreed, however, that this case involved the court's federal question jurisdiction (via ERISA) when it was first removed, if not now as well. That is sufficient grounds for it to remain here. *See, e.g., Pedraza v. Holiday Housewares, Inc.,* 203 F.R.D. 40, 44 (D.Mass.2001) (dismissal of federal questions, upon which removal was based, "does not ... divest this Court of jurisdiction" or mandate a remand); *Williams–Ward v. Lorenzo Pitts, Inc.,* 908 F.Supp. 48, 52 (D.Mass.1995) (removed federal question case would not be remanded, even though plaintiff waived all his federal claims). *Cf. Ching v. Mitre Corp.,* 921 F.2d 11, 13 (1st Cir.1990) ("An amendment to a complaint *after removal* designed to eliminate the federal claim will not defeat federal jurisdiction.") (emphasis in original). Accordingly, Karen's motion to remand will be denied.

## III. KAREN'S MOTIONS TO STRIKE

Karen's two motions to strike seek to exclude from the court's consideration seven paragraphs of Nadine's Statement of Facts which accompanied her motion for summary judgment. In short, Karen argues that particular paragraphs contain impermissible hearsay. For the reasons which follow, the court will strike only paragraph 32. As will be shown below, however, little of what remains will even be considered by the court with regard to the parties' cross-motions for summary judgment.

■ Karen's first motion targets Paragraphs 26 and 27 which aver that, after their divorce, Aaron told Nadine that he continued to name her as the beneficiary on his 401(k) account (Def.'s Facts ¶ 26) because he wanted to be sure she would be okay and that there was no one else to whom he wished to leave the money (*id.* ¶ 27). As Karen asserts, both paragraphs contain hearsay statements, namely, verbal assertions made by an individual not currently testifying. In the court's opinion, however, both statements are nonetheless admissible under Fed.R.Evid. 803(3). Rule 803(3) provides a hearsay exception for a "statement of the declarant's then existing state of mind, ... such as intent, plan, motive, design [or] mental feeling.)" Here, as is evident, the contents of both paragraphs regard statements made by Aaron as to his intent to retain Nadine as beneficiary on his 401(k) account and, therefore, fall squarely within the Rule 803(3) exception.

■ Karen's second motion to strike targets Paragraphs 28 through 32 of Nadine's Statement of Facts. These paragraphs state that, after the divorce: Aaron had at least one opportunity, if not more, to change the beneficiary designation on his 401(k) account (Def.'s Facts ¶ 28); when Aaron's employment was transferred

to P. Marston, Inc. in March of 2008, Rosemary Bache ("Bache"), the Human Resources Manager, met with Aaron (*id.* ¶ 29); during the course of that meeting, Bache discussed with Aaron the fact that his ex-wife, Nadine, was listed as the beneficiary on both the life insurance policy and 401(k) account (*id.* ¶ 30); Bache offered to help Aaron complete the two forms needed to change the beneficiary designations for the 401(k) account (*id.* ¶ 31); and Bache, both in her deposition and in her affidavit of August 12, 2008, stated that Aaron responded by saying "no," "that he did not want to do that" (*id.* ¶ 32).

In the court's view, Paragraphs 28 through 30, although seemingly hearsay, are nonetheless admissible for present purposes. Pursuant to Fed.R.Evid. 801, hearsay must be a "statement," *i.e.*, either "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Fed.R.Evid. 801(a), (c). For the most part, however, Paragraphs 28 through 30 appear to set out facts, not assertions by a declarant. For example, Paragraph 28 merely states that Aaron had the opportunity to change the named beneficiary for his 401(k) plan; it makes no mention of any conduct or statement by any party. Similarly, Paragraph 29 simply states that Aaron met with Bache, and Paragraph 30 states only that, during this meeting, there was a discussion regarding the beneficiary of the 401(k); neither paragraph identifies any statement or conduct by a declarant intended as an assertion.

■ Paragraph 31, on the other hand, involves a more particular statement, namely, an offer by Bache to help Aaron complete the paperwork to change the beneficiary. Still, this statement does not qualify as hearsay since it is not "offered . . . to prove the truth of the matter asserted." Fed.R.Evid. 801(c). That is, the statement is not being offered to prove that Bache could, or would, help Aaron change the named beneficiary but, rather, that the offer *itself* was the legally significant item, as it demonstrated a declined opportunity for Aaron to have changed the beneficiary. Simply put, the statement is not inadmissible hearsay.

In contrast, the court will strike Paragraph 32. The specificity of that statement, in the court's view, it goes beyond Aaron's mere state of mind. It should be noted, however, that Karen has not sought to strike the averment in Paragraph 33 that, in a letter to Michael P. Bently, the attorney for Karen as executrix of Aaron's estate, Bache indicated that Aaron was aware that Nadine was his designated beneficiary and that, in fact, Aaron was recently given the chance to complete a new beneficiary form but chose not to do so. (Def.'s Facts ¶ 33.)

## IV. CROSS-MOTIONS FOR SUMMARY JUDGMENT

■ Nadine, Aaron's former wife, makes three arguments for summary judgment in her favor. First, she argues that, even if there is an implied waiver in the Separation Agreement, ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), voids the waiver. According to Nadine, the anti-alienation provision may be overcome only when there is a Qualified Domestic Relations Order ("QDRO"). *See* 29 U.S.C. § 1056(d)(3)(A). Since no such order was ever issued, she asserts, the Separation Agreement does not fall into the limited "QDRO" exception to the anti-alienation provision. Second, Nadine argues that, in any event, the language of the Separation Agreement did not alter Aaron's designation of her as his 401(k) account beneficiary. And third, Nadine argues that she never waived her right to be Aaron's 401(k) account beneficiary because the "disclaimer" in the Sepa-

ration Agreement was not clear and un-equivocal.

For her part, Karen argues that the court ought to refer to Massachusetts common law, namely, the principle that "[d]ivorce does not revoke a designation of beneficiary unless the matter is expressly touched upon in the divorce proceedings or the insurance contract so provides." *Stiles v. Stiles,* 21 Mass.App.Ct. 514, 487 N.E.2d 874, 875 n. 3 (1986) (citations omitted). According to Karen, the Separation Agreement, the other documents relied upon by the Family and Probate Court, and the understanding of the parties at the time make it clear that Nadine made a knowing "common law" waiver to be beneficiary of Aaron's 401(k) plan, which waiver should be enforced by the court.

## A. STANDARD OF REVIEW

"Summary judgment is warranted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Uncle Henry's, Inc. v. Plaut Consulting Co.,* 399 F.3d 33, 41 (1st Cir.2005) (quoting Fed. R.Civ.P. 56(c)). "An issue is 'genuine' for purposes of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which might affect the outcome of the suit under the governing law." *Carcieri v. Norton,* 398 F.3d 22, 29 (1st Cir.2005) (citations and further internal quotation marks omitted). The mere fact that both parties move for summary judgment does not affect this standard, *see Alliance of Auto. Mfrs. v. Gwadosky,* 430 F.3d 30, 34 (1st Cir.2005) (citation omitted), particularly where, as here, most of the facts are undisputed,

*Littlefield v. Acadia Ins. Co.,* 392 F.3d 1, 6 (1st Cir.2004).

## B. DISCUSSION

To resolve these motions, the court must first analyze the Supreme Court's recent decision in *Kennedy* in conjunction with other applicable legal principles. In the end, considering the facts in a light most favorable to Karen, the court concludes that Nadine is nonetheless entitled to judgment as a matter of law. As a result, Nadine's motion for summary judgment will be allowed while Karen's cross-motion will be denied.

As an initial matter, it would appear that the outcome of the instant dispute is controlled by the Supreme Court's *Kennedy* decision, which unanimously held that a plan administrator did not err when it paid to an ex-wife the proceeds of her former husband's pension upon his death even though she had waived her interest in her husband's pension benefits in the divorce decree. *See id.,* 129 S.Ct. at 873. The Court determined that, although the waiver was not rendered invalid by ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), which states that benefits under a plan "may not be assigned or alienated," the plan administrator properly disregarded the waiver since it conflicted with the designation previously made by the husband in accord with plan documents, which designation had remained unaltered. *Id.* at 868. *See also* 29 U.S.C. § 1104(a)(1)(D) (obligating plan administrators to manage ERISA plans "in accordance with the documents and instruments governing" them).

In large part, the facts in *Kennedy* parallel those here. The husband participated in an employee pension plan and designated his wife as sole beneficiary. *Kennedy,* 129 S.Ct. at 869. When they divorced, the wife waived her interest in the husband's

pension plan in the divorce decree. *Id.* Afterwards, however, the now former-husband did not remove or replace his former wife as the designated beneficiary. Nevertheless, after he died, the couple's daughter, as executrix of his estate, requested the plan administrator to distribute the pension benefits to the estate. *Id.* The plan administrator refused and, instead, paid the benefits to the decedent's former wife as she was still named as the designated beneficiary. *Id.* The estate then sued the plan administrator to recover the benefits. Given the waiver in the divorce decree, the district court awarded the benefits to the estate. *Id.* The Court of Appeals for the Fifth Circuit reversed, holding that the former wife was entitled to the pension benefits because the only way she could effectively waive her rights thereto was by filing a QDRO with the plan administrator, pursuant to 29 U.S.C. § 1056(d)(3), which specifically relinquished her interest; that had not occurred. *Id.* at 869–70. The waiver of her interest via the divorce decree itself, the Fifth Circuit stated, was ineffective. *Id.* at 870.

The Supreme Court affirmed, deciding that the plan administrator acted properly when distributing the pension benefits to the named beneficiary despite the apparent waiver. The Court concluded that ERISA mandates that plan administrators follow plan documents in distributing benefits. *See* 29 U.S.C. § 1104(a)(1)(D). To do otherwise, the Court determined, would undermine the uniform administrative scheme governing ERISA and promote unnecessary litigation. *Kennedy,* 129 S.Ct. at 875–76. *See also Egelhoff v. Egelhoff,* 532 U.S. 141, 148, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001) (discussing ERISA's "uniform administrative scheme" with "a set of standard procedures to guide processing of claims and disbursement of benefits") (citation and internal quotation

marks omitted); *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (noting that ERISA's statutory scheme "is built around reliance on the face of written plan documents").

In effect, the Supreme Court in *Kennedy* sided with those courts which previously took a "plan documents" approach, *id.* 129 S.Ct. at 877 ("And this case does as well as any other in pointing out the wisdom of protecting the plan documents rule.") (citing *McMillan v. Parrott,* 913 F.2d 310, 312 (6th Cir.1990)), rather than a "federal common law approach," *i.e.,* looking at the surrounding circumstances, including language waiving benefits in divorce decrees, *id.* (citing *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 259, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) ("The authority of courts to develop a 'federal common law' under ERISA ... is not the authority to revise the text of the statute.")). *See also Estate of Altobelli v. IBM Corp.,* 77 F.3d 78, 80 (4th Cir.1996) (holding, pre-*Kennedy,* that "federal courts may resolve [ERISA waiver issue] by developing federal common law"); *Metropolitan Life Ins. Co. v. Flinkstrom,* 303 F.Supp.2d 34, 40–41 (D.Mass.2004) (similar) (citing cases). However, as distinct from many "plan documents" decisions, the Court's decision was not predicated on the parties' failure to file a QDRO. Indeed, the Court determined that a QDRO was not applicable to the situation at hand. *Kennedy,* 129 S.Ct. at 873 (wife's waiver did not constitute an "assignment or alienation" because she "did not attempt to direct her interest in the ... benefits to the Estate or any other potential beneficiary"). In footnote 10 of its decision, the Court also stated that the anti-alienation provision of ERISA does not make a nullity of a waiver "in circum-

stances in which it is consistent with plan documents." *Id.* at 875 n. 10.

Here, it cannot be said that Nadine's alleged waiver is "consistent with plan documents" so as to have allowed the plan administrator to distribute the benefits directly to the estate. Although the standard of consistency was left undefined, the Court did mention earlier in its decision a "qualified disclaimer" of benefits as defined by the Tax Code, 26 U.S.C. § 2518, which would have the effect of switching the beneficiary to an "alternate ... determined according to a valid beneficiary designation made by the deceased." *Id.,* 129 S.Ct. at 869. No such disclaimer was filed here. The Court also made mention of spendthrift provisions, finding a "general principle that a designated spendthrift can disclaim his trust interest" in payments then due and payable. *Id.* at 872 (also noting that "the law certainly is not so absurd as to force a man to take an estate against his will") (quoting *Townson v. Tickell,* 3 Barn. & Ald. 31, 36, 106 Eng. Rep. 575, 576–77 (K.B.1819)). Nadine has offered no such disclaimer. Finally, the Court suggested but did not conclude that a waiver by a beneficiary might be given effect over a beneficiary designation in plan documents if those documents "provide no means for a beneficiary to renounce an interest in benefits." *Id.* at 877 n. 13. Karen makes no such argument in the instant matter.

Still, as Karen points out, the Supreme Court in footnote 10 of its decision specifically declined to express any view as to whether an estate, once benefits were distributed by a plan administrator, can bring an action directly against the named beneficiary to obtain those benefits. *Id.* at 875 n. 10. This declination, in this court's opinion, will no doubt take on greater import as time goes on; in fact, Karen points out that this is the very posture of the instant action. Thus, the Supreme Court may have closed one door to litigation against plan administrators but it may well have opened another to litigation between family or former family members.

The Supreme Court mentioned three cases in the course of its declination. First, the court cited *Boggs v. Boggs,* 520 U.S. 833, 853, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997), where it previously found that ERISA's anti-alienation provision barred the first wife of a deceased pension-plan participant from making a testamentary transfer of her interest in her former husband's pension benefits. *Kennedy,* 129 S.Ct. at 875 n. 10. The court also cited *Sweebe v. Sweebe,* 474 Mich. 151, 712 N.W.2d 708, 712–13 (2006), which distinguished *Boggs* and held that, "while a plan administrator must pay benefits to the named beneficiary as required by ERISA," thereby anticipating the Supreme Court's ruling in *Kennedy,* "the consensual terms of a prior contractual agreement," namely, an agreement memorialized in a judgment of divorce, "may prevent the named beneficiary from retaining those proceeds" after the benefits are distributed. *Id.* Finally, the Court cited *Pardee v. Pardee,* 112 P.3d 308, 315–16 (Okla.2005), which found that pension plan funds—which had been withdrawn by a pensioner for his sole use in apparent contravention of a divorce decree awarding one-half of that fund to his former wife—were "no longer entitled to ERISA protection"; that case was remanded for the trial court to consider whether a constructive trust ought to be imposed for the benefit of the now deceased-pensioner's former wife. *Id.*

As so described, these three decisions appear to draw a line between pre-distributed funds and distributed funds. Indeed, the *Pardee* court believed that *Boggs* itself had noted such a distinction. *Id.,* 112 P.3d at 313 (quoting the Court's observation in

*Boggs* that "this case does not present the question whether ERISA would permit a nonparticipant spouse to obtain a divisable community property interest in benefits paid out during the existence of the community between the participant and that spouse"). To be sure, this may be something of an overstatement.[3] As described, however, the Court did not preclude the possibility of post-distribution lawsuits among family members. *See Kennedy,* 129 S.Ct. at 875 n. 10.

In this court's estimation, such lawsuits would appear to go against the various interests which the Supreme Court deemed served by a uniform administrative scheme. As the Court indicated in *Kennedy,* "[t]he point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: 'simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.' " *Id.* at 875–76 (quoting *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 283 (7th Cir.1990) (Easterbrook, J., dissenting)). It is difficult to believe that these interests would simply fall by the wayside once funds had been distributed, particularly in cases, such as the one at bar, where the participant had the opportunity post-divorce to either file a QDRO with the plan administrator or simply change the beneficiary form. After all, an ERISA participant has full control over the distribution of his or her benefits and

the source of greatest clarity of a participant's intent is the beneficiary designation form filed with the plan. *See McMillan,* 913 F.2d at 312.

Nonetheless, this court acknowledges that the First Circuit itself, pre-*Kennedy,* appears to have treated distributed funds differently, albeit in a somewhat different context. Addressing an appeal by a judgment debtor challenging an order to deposit all of his income in a designated bank account and limiting his withdrawal from that account, the First Circuit in 2004 held, in applicable part, that ERISA's anti-alienation provision applies to benefits "only while held by the plan administrator and not after they reach the hands of the beneficiary." *Hoult v. Hoult,* 373 F.3d 47, 54 (1st Cir.2004) (citing cases).

As might be expected therefore, Karen, as administratrix of Aaron's estate, places great stock in *Kennedy's* footnote 10 and asserts that there is simply no ERISA bar to her suing Nadine for the funds previously distributed by Aaron's employer. Nadine, in turn, has met this challenge head-on. For its part, the court, having considered the parties' respective arguments, concludes that, given the undisputed facts, Nadine's "waiver," if waiver it was, does not preclude her from retaining the 401(k) funds distributed to her.

■ While there are a variety of decisions upon which the parties rely, each decision turns on the particular language in either the plan documents or the divorce decree or both, as well as the surrounding circumstances, For example, in an unreported state trial court case upon which

---

**3.** The Supreme Court held in *Boggs* that ERISA preempts any attempt by state law, otherwise inconsistent with plan terms, to establish plan benefit entitlements. *Id.,* 520 U.S. at 844, 117 S.Ct. 1754. Moreover, the Court indicated that, "[i]f state law is not pre-

empted, the diversion of retirement benefits will occur regardless of whether the interest in the pension plan is enforced against the plan or the recipient of the pension benefit." *Id.* at 853, 117 S.Ct. 1754.

Karen relies, the court looked to the following language incorporated into the parties' divorce decree: "The Wife waives all rights to the husbands [sic] Polaroid Retirement Funds, annuities, ESOP shares, future pension rights and all other retirement, savings or assets not covered by this agreement accumulated now or in the future." *Wennett v. Capone*, 1996 WL 91931, at *1 (Mass.Sup.Ct. Feb. 29, 1996). Despite the fact that the husband never changed the beneficiary designation before his death, the court held that the wife had specifically relinquished her rights via the divorce decree and, accordingly, ordered the plan administrator to distribute the retirement plan assets to the pensioner's estate. *Id.*, at **5–6.[4] Similarly, the Seventh Circuit in 1990 held that a former wife had specifically waived any interest as beneficiary of her husband's pension. *Fox Valley*, 897 F.2d at 277, deemed abrogated by *Kennedy*, 129 S.Ct. at 870 n. 4.[5] In contrast, when confronted with similar facts, the Eighth Circuit affirmed the district court's award of benefits to a former wife, the named beneficiary, finding that the general wording in the divorce decree did not specifically refer to or modify the beneficiary interest of the ex-wife. *See Lyman Lumber Co. v. Hill*, 877 F.2d 692, 693 (8th Cir.1989).[6] *See also Melton*, 324 F.3d at 946 (similar); *Sun Life Assur. Co. of Can. v. Sullivan*, 206 F.Supp.2d 191 (D.Mass.2002) (similar).

Here, Aaron's Designation Beneficiary Form had the following introductory language: "I understand that if I am married, my spouse shall automatically be my designated Beneficiary unless I elect otherwise and my spouse consents to such election." (Doc. No. 16, Ex. 2.) The Form goes on to state: "I hereby designate the following person or persons as primary Beneficiaries of my Account under the Plan payable in

---

**4.** This, of course, flies in the face of the Supreme Court's later decision in *Kennedy*, which directed that plan administrators follow the beneficiary designation in the plan documents when distributing benefits.

**5.** The pension plan in *Fox Valley* read as follows:

The Participant's Beneficiary shall be the person or persons he so designates in the last written notice received in the Administrative Office prior to the Participant's death. It shall be the responsibility of the Participant to notify in writing the Administrative Office of his choice of Beneficiary or any change in Beneficiary. A Participant may, without the consent of his then designated Beneficiary, or Beneficiaries, change his Beneficiaries. In the event that the [P]articipant shall fail to name a Beneficiary, or if such Beneficiary shall not be living at the time of the Participant's death, such benefits shall be paid to:
a) his legal spouse, if living;
b) if no spouse be living, then to his living children in equal shares;
c) if no spouse or children be living, then to his parents in equal shares, or the survivor of such parents if only one (1) be living;

d) if no spouse, children, or parents be living, then to his living brothers and sisters in equal shares;
e) if no spouse, children, parents, or brothers and sisters be living, then to the estate of such deceased Participant.
*Id.*, 897 F.2d at 277. Again, it should be noted that the Supreme Court rejected the federal *common law* approach taken by the majority in *Fox Valley*. *See Kennedy*, 129 S.Ct. at 870 n. 4. *See also Melton v. Melton*, 324 F.3d 941, 943, 946 (7th Cir.2003) (determining that divorce decree—which contained a blanket revocation of the parties' interests in all financial and property rights arising "by reason of their marital relation" and "any asset assigned to a party by this agreement" including "annuities, life insurance policies" and other financial instruments—was not sufficiently explicit to operate as a waiver by former wife of proceeds of ERISA-regulated life insurance policy).

**6.** There, the divorce decree stated that the plan participant "shall have as his own, free of any interest of his [ex-wife], his interest in the profit-sharing plan of his employer." *Id.*

the event of my death." (*Id.*) As described, the only beneficiary named by Aaron was Nadine. In addition, prior to the signature line, the form stated the following: "I reserve the right to revoke or change any Beneficiary designation. I hereby revoke all my prior designation (if any) of primary and contingent Beneficiaries." (*Id.*) As described, Aaron signed the Form on September 13, 2001, and never revoked or changed the designation.

As for Aaron's and Nadine's Separation Agreement, Article Seven provided that Aaron would "retain" his Aaron's "retirement 401(k)." This retention language is reflected again in the following handwritten language initialed by both Nadine and Aaron: "Each party agrees that they will retain their separate pension agreements and plans ... and renounce any interest in the pension of the other." In the court's view, however, this language lacks the specificity which caused other courts to uphold a waiver. *See also Stiles*, 487 N.E.2d at 875 n. 3 (Mass.App.Ct.1986) ("Divorce does not revoke a designation of beneficiary unless the matter is expressly touched upon in the divorce proceedings or the insurance contract so provides"). Indeed, it should be noted that when, on May 30, 2008, after Aaron's death, Karen's then attorney sought by letter to have Nadine disclaim any interest in Aaron's profit sharing plan, the attorney acknowledged that Article Seven of the Separation Agreement "may not be the most artfully crafted," even though counsel believed that the intent of the parties was clear. (See Def.'s Facts, Exhibit.) If Karen's attorney was correct about intent, the request for a disclaimer was hardly necessary.

More importantly, the Separation Agreement did not modify, let alone revoke, the beneficiary designation in Aaron's profit sharing plan. Nadine's waiver, if waiver it was, simply opened the door

for Aaron to change the designation. And while both Articles Seven and Ten of the agreement addressed Nadine's and Aaron's respective property rights, neither article barred Aaron from continuing to designate Nadine as beneficiary of his profit sharing account. Nor did either Article bar Nadine from being the beneficiary in the event Aaron continued to designate her as such. In effect, Article Seven simply gave Aaron the right to retain his account, including the right to designate the beneficiary of his choice. Accordingly, he was entitled to conclude that, even if Nadine had "waived" the benefits at the time of the divorce, his decision thereafter not to change the beneficiary amounted to a redesignation.

As for Article Ten of the agreement, Nadine did in fact waive any claim that she would have against Aaron's estate. But Nadine's status as beneficiary of the profit-sharing account did not involve a claim against Aaron's estate. Because Aaron's employer, in accord with the plan documents and with *Kennedy*, properly distributed the funds directly to her, they never became an asset of Aaron's estate.

Perhaps most importantly for present purposes, the undisputed facts indicate that Aaron was fully aware that there was a designation form on file naming Nadine as beneficiary. As indicated, Bache, the Human Resources Manager at Aaron's employer, met with him post-divorce, discussed the fact that Nadine remained the beneficiary of his 401(k) account, and offered to change the beneficiary designation should he wish. She later indicated in a letter to Karen's attorney that "Aaron was aware that [Nadine] was his designated beneficiary[;] in fact Aaron was recently given the chance to complete a new Beneficiary Form but he chose not to." (Def.'s Facts, Exhibit 4.) Thus, even if the court were to disregard all the statements which

Aaron himself is asserted to have made to Nadine—to wit, that he wanted her to be "okay" and there was no one else to whom he wished to leave the money (see paragraphs 26 and 27 of Nadine's Statement of Facts)—there is more than sufficient evidence remaining which undisputably indicates a purposeful decision on Aaron's part to retain her as beneficiary.[7]

Aaron had more than three and one-half years from the time of his divorce to just before his death to change his 401(k) beneficiary form but did not do so. *Cf. McMillan*, 913 F.2d at 311–12 (relying on plan documents and noting that four years had passed between the plan participant's divorce and his death during which he could have changed the beneficiary designation at any time). That fact, together with all the other undisputed facts as well as the language in the plan and divorce documents, makes it clear that Karen simply has not raised genuine issues of material fact as to counter Nadine's motion for summary judgment as a matter of law.

### V. CONCLUSION

For the reasons stated, the court rules as follows: Karen's motion to remand is DENIED; Karen's motion to strike is ALLOWED with respect to paragraph 32, but otherwise DENIED; Nadine's motion for summary judgment is ALLOWED; and Karen's cross-motion for summary judgment is DENIED. Accordingly, judgment shall enter for Defendant, Nadine Staelens, and this case shall be closed.

IT IS SO ORDERED.

---

**7.** It should be noted that, as Karen herself points out, in March of 2008, during Aaron's orientation with his new employer, he named Karen, his mother, as beneficiary of both his new 401(k) and its life insurance. (Def.'s Facts, Exhibit (Bache Depo.) at 27–28.) He did not, however, change Nadine as the beneficiary of his pre-existing 401(k) account with Rice Oil.