**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3842-21

IN THE MATTER OF
THE ESTATE OF
BRIAN G. PETRONACI.

_____

Submitted October 3, 2023 – Decided January 10, 2024

Before Judges Haas and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Sussex County, Docket No. P-000687-19.

Jardim, Meisner & Susser, PC, attorneys for appellant Laurie Voigt (Dennis Francis Gleason, of counsel; Richard S. Meisner and Alexa Foster, on the brief).

Respondents have not filed a brief.

PER CURIAM

In this one-sided appeal, defendant Laurie Voigt appeals from the July 14, 2022, Chancery Division order granting summary judgment to plaintiffs Glen and Pamela Petronaci, co-administrators of the estate of Brian Petronaci, Voigt's ex-husband and the co-administrators' son, and requiring Voigt to surrender all

proceeds she received from decedent's 401(k) retirement plan account. We affirm.

Voigt and Brian[1] were married from 2008 to 2015. Brian worked for CompuCom Systems, Inc. (CompuCom), a technology consulting company, from 2004 until 2009. During his employment with CompuCom, he contributed to a 401(k) Matched Retirement Savings Plan and listed defendant as his beneficiary.

When the parties divorced in 2015, they entered into a marital settlement agreement (MSA) that addressed the division of their assets, among other things. The MSA was drafted and executed without the assistance of counsel. The MSA was later incorporated into their final judgment of divorce.

Section 9 of the MSA, entitled "WAIVER OF EMPLOYEE AND/OR MILITARY RETAINER OR RETIREMENT BENEFITS," provided that:

> Both parties agree to waive any rights, interests, or claims, that either may now have or in the future to receive employee and/or military retainer or retirement benefits resulting from the past, present or future employment and/or service of the other party in the Armed Forces of the United States[2] except as

---

[1] Because of the common surname, we use first names to refer to the parties and intend no disrespect.

[2] Neither Voigt nor Brian was in the Armed Forces.

A-3842-21

otherwise provided for this Agreement. Both parties understand the full import of this provision.

Section 2.2 of the MSA stated that "[e]xcept for the enforcement of rights hereunder, each spouse hereby relinquishes and waives any right and/or interest which he or she may have in the estate of the other spouse unless under a Will executed subsequent to the effective date thereof . . . ." Further, the MSA's integration clause, memorialized in section 2.5, stated:

> This Agreement embodies in its entirety the agreements of the parties concerning the disposition of their property and their property rights; provisions for children, if applicable; maintenance of the spouse, if applicable; and all other issues between them. There are no other agreements existing between the parties with reference to such matters.

Approximately three years after the divorce, Brian died intestate in a fatal accident on January 7, 2018. At the time of Brian's death, Voigt was still listed as the beneficiary on the CompuCom 401(k) retirement account. As a result, the plan administrator distributed the account proceeds to her. In 2019, after Voigt received payment from the plan, plaintiffs filed a verified complaint and sought issuance of an order to show cause against Voigt to enforce the MSA's waiver provision and recover the plan proceeds, which they alleged amounted to $116,198.03. See R. 4:83-1 ("[A]ll actions in the Superior Court, Chancery

3

Division, Probate Part, shall be brought in a summary manner by the filing of a complaint and issuance of an order to show cause pursuant to [Rule] 4:67.").

In response, Voigt filed a contesting answer with affirmative defenses. In her answer, Voigt admitted that the approximate value of the 401(k) account was $116,000 but asserted that "the value [was] stated on a 'pre-tax' (i.e.[] not yet taxed by any government entity upon distribution from the trust)." Voigt further asserted that "[p]ursuant to the Employee Retirement Income Security Act ('ERISA')[3] and under the doctrine of federal preemption," she was "the sole person . . . entitled to proceeds of the 401(k) account" as "the only named beneficiary." Additionally, in her answer, Voigt stated that because Brian had "never changed [her] as the sole beneficiary" and the couple "were in the process of reconciliation[,] Brian intended that [she] remain the sole beneficiary of the 401(k) account."

Voigt also submitted a January 8, 2020, certification opposing plaintiffs' request for summary disposition. Voigt certified that the waiver in section 9 of the MSA only applied to "[her] defined pension plan" and that the couple never intended that section 9 would "apply to [their] respective 401(k) accounts." Voigt further asserted that "for several months before [Brian's] death," the

---

[3] 29 U.S.C. §§ 1001-1461.

couple had had "multiple conversations regarding reconciling," and "[i]n at least one of those [reconciliation] conversations in 2017, . . . Brian told [her] that he did not remove [her] name as beneficiary on his 401(k) account. He further told [her] that he wanted [her] to be the beneficiary."

Following the submission of briefs and oral argument, the judge entered an order on July 14, 2022, granting plaintiffs summary judgment and ordering Voigt to "surrender any and all proceeds obtained by her from the CompuCom Systems, Inc. 401(k) Matched Retirement Savings Plan within sixty (60) days." In an accompanying written statement of reasons, the judge discussed the judicial preference for enforcing settlement agreements, noting that absent "fraud or other compelling circumstances," a court generally will not disturb a contract where the parties have negotiated and agreed on essential terms (quoting Hannigan v. Twp. of Old Bridge, 288 N.J. Super. 313, 319 (App. Div. 1996) (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 125 (App. Div. 1983))). According to the judge, where contract terms are "'clear and unambiguous, there is no room for construction and the court must enforce those terms as written,'" (quoting Watson v. City of E. Orange, 175 N.J. 442, 447 (2003)), "giving them 'their plain, ordinary meaning'" (quoting Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 270 (2008)).

A-3842-21

Applying those principles, the judge concluded that the "plain ordinary meaning" of section 9 of the MSA "clearly defined forfeiture of rights to employee and/or military retirement benefits in consideration of the MSA" and the "court [would] not make a better agreement . . . than what the parties intended for themselves." The judge reasoned "[t]he fact [that Brian] never changed the beneficiary designation [after the divorce was] of no moment" because both parties "concede[d] the designation precede[d] the MSA." The judge explained that "[Brian] did not have to change the beneficiary designation" because Voigt had already "forfeited 'any right' to receive it." As to Voigt's claims of reconciliation and Brian's intent for her to remain a beneficiary, the judge found that such evidence would be inadmissible at trial because "'the parol evidence rule operates to prohibit the introduction of oral promises to alter or vary an integrated written instrument'" (quoting Filmlife, Inc. v. Mal "z" Ena, 251 N.J. Super. 570, 573 (1991) (quoting Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super 369, 378 (App. Div. 1960))).

Finally, the judge addressed New Jersey's "revocation on divorce" statute, N.J.S.A. 3B:3-14(a),[4] which provides in relevant part:

> Except as provided by the express terms of a governing instrument, a court order, or a contract

---

[4] The judge noted that neither party had addressed the statute.

relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, a divorce or annulment:

(1) revokes any revocable:

(a) dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument . . . ;

. . . .

(2) . . . .

In the event of a divorce . . . provisions of a governing instrument are given effect as if the former spouse . . . disclaimed all provisions revoked by this section . . . .

N.J.S.A. 3B:1-1 defines a "[g]overning instrument" as including a "retirement or similar benefit plan."

In applying N.J.S.A. 3B:3-14(a) to the case, the judge noted that where New Jersey courts have applied this statute to life insurance beneficiary designations, "a decedent's failure to change the beneficiary designation following a divorce is irrelevant and revocation is implied." The judge concluded:

There is no room for construction here; [Voigt] and [Brian] forfeited their rights to each other's retirement benefits when they executed the MSA. The

A-3842-21

revocation upon divorce statute is applicable to non-probate assets.  Given the clear language of the MSA, the matter is ripe for summary disposition. Accordingly, plaintiff[s'] motion is [granted].

In ordering Voigt to surrender the plan proceeds, the judge noted that "the value of the account" was "$119,269.98" "at the time of [Brian's] passing."  This appeal followed.

On appeal, Voigt raises the following points for our consideration:

> I.    THERE ARE GENUINE ISSUES OF MATERIAL FACT THAT PRECLUDE JUDGMENT ON A SUMMARY PROCEEDING.
>
> II.    RELIANCE BY THE TRIAL COURT ON THE REVOCATION BY DIVORCE STATUTE IS MISPLACED (NOT RAISED BELOW).
>
> III.    THE TRIAL COURT FAILED TO STATE WITH SPECIFICITY THE AMOUNT OF JUDGMENT (NOT RAISED BELOW).

"[W]e review the trial court's grant of summary judgment de novo under the same standard as the trial court."  Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016).  That standard is well-settled.

> [I]f the evidence of record—the pleadings, depositions, answers to interrogatories, and affidavits—"together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact," then the trial court must deny

the motion. On the other hand, when no genuine issue of material fact is at issue and the moving party is entitled to a judgment as a matter of law, summary judgment must be granted.

[Steinberg v. Sahara Sam's Oasis, LLC, 226 N.J. 344, 366 (2016) (citations omitted) (quoting R. 4:46-2(c)).]

Whether a genuine issue of material fact exists depends on "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523 (1995). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). "We review issues of law de novo and accord no deference to the trial judge's [legal] conclusions . . . ." MTK Food Servs., Inc. v. Sirius Am. Ins. Co., 455 N.J. Super. 307, 312 (App. Div. 2018).

The "[i]nterpretation and construction of a contract is a matter of law for the court subject to de novo review." Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998) (citing Bradford v. Kupper Assocs.,

9

283 N.J. Super. 556, 583 (App. Div. 1995)). "The law grants particular leniency to agreements made in the domestic arena," thus allowing "judges greater discretion when interpreting such agreements." Guglielmo v. Guglielmo, 253 N.J. Super. 531, 542 (App. Div. 1992) (citing N.J.S.A. 2A:34-23).

Our goal in contract interpretation is governed by familiar rules:

> "It is well-settled that '[c]ourts enforce contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract."'" [In re Cnty. of Atl., 230 N.J. 237, 254 (2017)] (alteration in original) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)). The plain language of the contract is the cornerstone of the interpretive inquiry; "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn v. Quinn, 225 N.J. 34, 45 (2016).
>
> If we conclude that a contractual term is ambiguous, we "consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." [Cnty. of Atl.], 230 N.J. at 255 (quoting Cnty. of Morris v. Fauver, 153 N.J. 80, 103 (1998)). "In a word, the judicial interpretive function is to consider what was written in the context of the circumstances under which it was written, and accord to the language a rational meaning in keeping with the express general purpose." [Owens v. Press Publ'g Co., 20 N.J. 537, 543 (1956)].
>
> [Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 615-16 (2020).]

10

Thus, "[t]he judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011). That said, "[w]hen presented with an unambiguous contract, the court should not look outside the 'four corners' of the contract to determine the parties' intent, and parol evidence should not be used to alter the plain meaning of the contract." Namerow v. PediatriCare Assocs., LLC, 461 N.J. Super. 133, 140 (Ch. Div. 2018); see also Filmlife, Inc., 251 N.J. Super. at 573 ("[T]he parol evidence rule operates to prohibit the introduction of oral promises to alter or vary an integrated written instrument. . . .") (quoting Ocean Cape Hotel Corp., 63 N.J. Super. at 378).

Applying these principles, we are satisfied that there are no material facts in dispute, and we agree with the judge that plaintiffs are entitled to summary judgment. Critically, the MSA's waiver clause is clear and unambiguous, and Voigt has presented no credible evidence within the four corners of the MSA to support her contention that the waiver clause did not apply to Brian's 401(k). The plain meaning of section 9 of the MSA supports the interpretation that the couple intended to waive their rights to each other's retirement benefits. Thus, the waiver is valid and enforceable as a matter of law.

A-3842-21

In essence, Voigt is asking this court to look past the plain meaning of the MSA and consider extrinsic evidence of Brian's intent based on her assertions of the couple's reconciliation conversations. However, the "actual intent of the parties is ineffective unless made known in some way in the writing. It is not the real intent but the intent expressed or apparent in the writing that controls." Newark Publishers' Ass'n v. Newark Typographical Union, 22 N.J. 419, 427 (1956). Further, the parol evidence rule excludes evidence which "is offered for the purpose of 'varying or contradicting' the terms of an 'integrated' contract." Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953) (quoting Corbin on Contracts §§ 536, 543 (1951 ed.)). Here, the couple's intent as expressed in the waiver, along with the MSA's integration clause, bar Voigt from introducing evidence of any contradictory intent.

To further support her argument, Voigt relies on ERISA, asserting that "ERISA preempts any application of N.J.S.A. 3B:3-14(a)" and arguing that the judge erroneously applied "New Jersey state law" because Brian's retirement account is an ERISA-governed 401(k) account. See St. Peter's Univ. Hosp. v. N.J. Bldg. Laborers Statewide Welfare Fund, 431 N.J. Super. 446, 454 (App. Div. 2013) ("ERISA governs private employee benefit plans, and sets forth requirements, uniform standards, fiduciary responsibilities, and penalties.").

We acknowledge that ERISA preempts "all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). In Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141 (2001), the United States Supreme Court held that a Washington state statute, which provided that "the designation of a spouse as the beneficiary of a nonprobate asset [was] revoked automatically upon divorce," was "expressly pre-empted by ERISA" because the statute directly conflicted with ERISA's requirements that the plans be administered according to plan documents. Id. at 143, 146. Like the Washington statute, New Jersey's "revocation on divorce" statute, N.J.S.A. 3B:3-14(a), is subject to preemption. See Egelhoff, 532 U.S. at 143, 146.

Nonetheless, the fact that the plan is governed by ERISA only affects the plan administrator's duty to release funds to the designated beneficiary and has no bearing on the validity of the MSA's waiver. To that point, in Kennedy v. Plan Administrator for Dupont Savings & Investment Plan, 555 U.S. 285 (2009), the Court held that an ERISA plan administrator properly disbursed a decedent's funds to his ex-wife, notwithstanding the fact that the ex-wife had renounced any interest in her ex-husband's pension benefit plan in a common law waiver

incorporated into their divorce decree, but nonetheless remained as the beneficiary at the time of her ex-husband's death. Id. at 299-300.

There, the decedent enrolled in an employee pension benefit plan governed by ERISA and designated his wife as his sole beneficiary. Id. at 288-89. Just as in this case, the couple subsequently divorced and as part of the divorce decree, the ex-wife waived her interest in her ex-husband's pension plan. Id. at 289. When the ex-husband died without removing his ex-wife as the designated beneficiary and the plan administrator paid the funds to the ex-wife, his estate sued the administrator, arguing that the ex-wife had waived her interest. Id. at 289-90.

Importantly, the Supreme Court held that the ex-wife's waiver "did not constitute an assignment or alienation rendered void [by ERISA's anti-alienation provision]," id. at 297, which states that "benefits provided under the plan may not be assigned or alienated," 29 U.S.C. § 1056(d)(1).[5] However, in the interest of streamlining the administration of ERISA plans, the Court concluded that an administrator is "obliged to act 'in accordance with the documents and instruments governing the plan,'" and that "ERISA provides no exemption from

_____

[5] ERISA's anti-alienation provision does not apply to a certain class of orders known as "qualified domestic relations orders," which is not implicated here. See 29 U.S.C. § 1056(d)(3).

this duty when it comes time to pay benefits." Kennedy, 555 U.S. at 300 (quoting 29 U.S.C. § 1104(a)(1)(D)).

Thus, although the ex-wife had waived her right to the pension, the Court declared that the plan administrator "did its statutory ERISA duty by paying the benefits to [the ex-wife] in conformity with the plan documents." Id. at 299-300. Significantly, the Court explicitly declined to address the question of whether the estate could have sued the ex-wife to recover the plan proceeds after she received them, noting "[n]or do we express any view as to whether the [e]state could have brought an action in state or federal court against [the ex-wife] to obtain the benefits after they were distributed." Id. at 299 n.10.

The Third Circuit subsequently addressed the open question in Estate of Kensinger v. URL Pharma, Inc., 674 F.3d 131 (2012), where, once again, an ex-wife received ERISA plan benefits when the ex-husband never changed the beneficiary designation after their divorce and prior to his death, even though the ex-wife had waived her right to the proceeds through their divorce decree. Id. at 132. Instead of going after the plan administrator, an action now barred by Kennedy, the decedent's estate sued the ex-wife to enforce her waiver and recover the plan proceeds. Kensinger, 674 F.3d at 132.

In upholding the estate's right to sue the ex-wife to enforce contractual rights and recover the benefits, the Third Circuit reasoned that the goal of Kennedy was to ensure the "expeditious distribution of funds from plan administrators, not to [create] some sort of rule providing continued shelter from contractual liability to beneficiaries who have already received plan proceeds." Kensinger, 674 F.3d at 136 (emphasis omitted). To that end, the court held that "[i]f, after distribution, [the ex-spouse's] right to these funds is challenged because of her common law waiver, that challenge will be litigated as an ordinary contract dispute." Ibid. Accordingly, "permitting suits against beneficiaries after benefits have been paid does not implicate any concerns of expeditious payment or undermine any core objective of ERISA." Id. at 137 (emphasis omitted). Therefore, Voigt's reliance on ERISA to bar the estate's lawsuit to enforce her contractual waiver is misplaced.

In the alternative, Voigt asserts that the matter should be remanded nonetheless to determine the "precise amount of the judgment." Although the judge ordered Voigt to "surrender any and all proceeds obtained," Voigt argues that because "she paid taxes" on the proceeds, "[a]ny money judgment should not require her to pay the entire amount of the 401(k) account." However, Voigt's recourse is to file an amended income tax return.

16

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3842-21